FILED
US DISTRICT COURT
SAV DIV
2009 JUN 29 PM 1:21
[signature]
S. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> ALFREDO F. RASCO, ) <br> ) <br> Defendant. ) <br> ) | CASE NO. CR408-100 |

# O R D E R

Before the Court is Defendant Alfredo F. Rasco's Objections to the Order Granting the Motion to Disqualify. (Doc. 100.) After careful consideration, the Court issues the following order.

## BACKGROUND

On June 6, 2008, the United States of America filed an indictment charging Defendant Rasco with conspiracy, health care fraud, and aggravated identity theft. (Doc. 11.) Initially, Defendant Rasco hired attorney Alex L. Zipperer, III, who appeared on his behalf on July 7, 2008. (Doc. 26.) At that time, attorney Julie Wade was employed by the United States Attorney's Office. (Doc. 92 at 2.) Subsequently, Ms. Wade left the public sector to start her own law firm. (Id.) After Ms. Wade became a private attorney, Mr. Zipperer referred Defendant Rasco to Ms. Wade. (Doc. 100, Ex. 3, Transcript of Mar. 18, 2009

Hearing at 51.) A few days before she entered her appearance, Ms. Wade corresponded with the United States Attorney's Office about the representation and was told to expect "major pushback." (Id. at 25-26.) Ms. Wade decided to take the case anyway, and she made her first appearance on Defendant's behalf on January 27, 2009. (Doc. 76.) The next day the Government filed a "Motion for Inquiry Regarding Possible Conflict of Interest" as to Ms. Wade. (Doc. 78.)

In response to this Motion, the Magistrate Judge held a hearing on February 26, 2009. (Doc. 85.) At the hearing, the Government made a factual proffer as to why Ms. Wade should be disqualified from this case. (Doc. 100, Ex. 2, Transcript of Feb. 26, 2009 Hearing at 2-5.) Ms. Wade responded that if the Government was making a Rule 12.1 Motion, then they should have filed supporting evidence at the time of the Motion. (Id. at 6-11.) The Government responded that this was not a Rule 12.1 Motion, instead characterizing the Motion as "suggesting sua sponte action by the Court; not moving for a ruling in the substantive matters of the case." (Id. at 11-12.) After argument, the Magistrate Judge continued the hearing to provide Ms. Wade time to respond to the Government's

2

factual proffer, which Ms. Wade heard for the first time at the hearing. (Id. at 29-30.)

On March 18, 2009, the Magistrate Judge reconvened the hearing. (Doc. 89.) There, the Magistrate Judge heard testimony from two witnesses, Special Agent Josh Hayes of the Federal Bureau of Investigation and Assistant United States Attorney ("AUSA") Brian McEvoy. (Doc. 100, Ex. 3, Transcript of Mar. 18, 2009 Hearing at 4-37.) Both witnesses testified to roughly the same factual assertions: (1) Ms. Wade was an AUSA when the case was initially filed; (2) Ms. Wade was not staffed on the Rasco case in any way, either directly or as a supervisor; (3) Ms. Wade, Mr. McEvoy, and Mr. Hayes had casual conversations during which Mr. McEvoy and Mr. Hayes did not intentionally avoid talking about confidential information; (4) except as noted below, the witnesses could not remember any specific pieces of confidential information that they told Ms. Wade; and (5) they were "sure" Ms. Wade had confidential information about this case because they routinely divulged confidential information to AUSAs who were not staffed on a case. (Id.) Although the witnesses generally could not specify what confidential information Ms. Wade possessed, when pushed, they suggested she may have been aware of (1)

the location of the business involved in this case,[1] (2) the forthcoming superseding indictment,[2] and (3) the identity of the Defendant.[3] (Id. at 31.)

On May 15, 2009, the Magistrate Judge entered an Order construing the Government's Motion for Inquiry as a Motion to Disqualify Counsel[4] and granted the Motion based on Ms.

---

[1] The location of the business was no longer confidential by the time Ms. Wade entered her appearance in this case. (See Doc. 38 at 1.)

[2] The superseding indictment was no longer confidential by the time Ms. Wade appeared in this case. (See Doc. 38 at 1.)

[3] The identity of the Defendant was no longer confidential by the time Ms. Wade entered her appearance in this case. (See Doc. 38 at 1.)

[4] Although the Government has never conceded that their "Motion for Inquiry" was truly a Motion to Disqualify Counsel, there can be no question that the Government's Motion was really a veiled Motion to Disqualify Ms. Wade.

As an initial matter, the Government took the stance at the hearing that they were not sure a conflict existed, but simply wanted the Court to "sua sponte" explore the issue. This stance of confused helplessness cannot be reconciled with numerous actions by the Government. Indeed, the Government conceded that long before filing its Motion for Inquiry, it believed there was a conflict and warned Ms. Wade to expect "major pushback." (Doc. 100, Ex. 3, Transcript of the March 18, 2009 Hearing at 25.) Further, immediately following the Government's statements that they were not sure if a conflict existed, they launched into a factual proffer and argument intended to disqualify Ms. Wade. (Doc. 100, Ex. 2, Transcript of the February 26, 2009 Hearing at 1-6.) Finally, not only did the Government make a factual offer intended to disqualify Ms. Wade, they came armed with witnesses and legal arguments to support their theory.

Second, the Government's statement that their Motion was "suggesting sua sponte action by the Court," is nothing short of incredible. (Doc. 100, Ex. 2, Transcript of the February 26, 2009 Hearing at 11.) Surely the Government is

4

Wade's possession of confidential information with respect to the case. (Doc. 92.) Defendant filed this objection on May 19, 2009, contending that (1) the Magistrate Judge's Order ignored the requirement that the confidential information be confidential at the time the rule is applied; (2) the Order was erroneous as a matter of law because it did not properly apply the presumption of a Defendant's choice of counsel under the Sixth Amendment; and (3) the Order is based, in part, on a factual

---

aware that sua sponte is defined as "[w]ithout prompting or suggestion; on its own motion." Black's Law Dictionary 1464 (8th ed. 1999). In other words, there is no such thing as moving a Court for sua sponte action, and the Court cannot fathom that the AUSAs, who are very competent, were not so aware when they made this Motion.
    Finally, the Court notes that if the United States Attorney's Office moved for the disqualification, they would have had the burden of proving that a conflict existed. On the other hand, if the Court acted "sua sponte," under its supervisory powers, the Government would not have to satisfy this burden. Compare In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003) (burden on movant when making a motion to disqualify), Duvall v. Bledsoe, 274 Ga. App. 256, 258, 617 S.E.2d 601, 604 (2005) (burden on movant when making a motion to disqualify), with Wheat v. United States, 486 U.S. 153, 160 (1988) (recognizing the need of district courts to have the freedom to investigate conflicts of interest on their own arises out of the legitimate wish of district courts to have their judgments remain intact on appeal). The Court doubts that this distinction was lost on the AUSA when he filed this Motion.
    In sum, the Court concurs with the Magistrate Judge that this was a Motion to Disqualify Ms. Wade, and the Government cannot escape their burden by labeling their Motion a "Motion for Inquiry."

inaccuracy that Ms. Wade appeared on behalf of the Government at Defendant's arraignment.

## ANALYSIS

The decision to disqualify Ms. Wade as counsel for Defendant is a non-dispositive pretrial matter. When a party objects to a magistrate judge's determination of a non-dispositive pretrial matter, this Court considers the objection and sets aside any portion of the magistrate judge's order that is clearly erroneous or contrary to law. S.D. Ga. Local Rule 72.2.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." The Supreme Court has explained that this right is "designed to assure fairness in the adversary criminal process . . . [because] an unaided layman may have little skill in arguing the law or in coping with an intricate procedural system." Wheat v. United States, 486 U.S. 153, 158-59 (1988). Therefore, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented

by the lawyer whom he prefers." Id. at 159. Moreover, "the need for fair, efficient, and orderly administration of justice overcomes the right to counsel where an attorney has" an "actual conflict or serious potential conflict of interest." United States v. Campbell, 491 F.3d 1306, 1310-11 (11th Cir. 2007).

In this Court, the Georgia Bar Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct provide the basis for determining conflicts of interest. S.D. Ga. Local Rule 83.5(d). To the extent that these rules conflict, the Georgia Bar Rules of Professional Conduct control. Id. In this case, the Magistrate Judge found a conflict under Georgia Rule of Professional Conduct 1.11 on the basis that Ms. Wade received confidential information about this case during her employment at the United States Attorney's Office. Specifically, the Magistrate Judge ruled that a conflict existed under Rule 1.11(b).[5] (See Doc. 92.)

---

[5] Although the Magistrate Judge referenced Rule 1.11(a) along with Rule 1.11(b), the Court assumes that the ruling was made under Rule 1.11(b). First, nearly all of the discussion of the rules in the Order was centered on Rule 1.11(b). (Doc. 92 at 6.) Second, the Magistrate Judge based his ruling on a finding that Ms. Wade had confidential information which is relevant to Rule 1.11(b) and not 1.11(a). (Id. at 7.) Third, to find that Ms. Wade was conflicted under 1.11(a) would require a finding that Ms. Wade had "substantial responsibility" for this case

7

Georgia Rule of Professional Conduct 1.11(b) provides, in pertinent part:

> a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

Confidential information is defined as "information which has been obtained under governmental authority and which, at the time the rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public." Id. 1.11(e). The comments to the Rule are instructive on its construction. Comment 3 to Georgia Rule of Professional Conduct 1.11 explains that the Rule "should not be so restrictive as to inhibit transfer of employment to and from the government. The government

---

while at the United States Attorney's Office. Brown v. State, 265 Ga. App. 603, 607, 568 S.E.2d 727, 732-33 (2002). Even under the case cited by the Government, United States v. Miller, 624 F.2d 1198, 1202 (3d Cir. 1980), it is clear that the attorney must have had at least supervisory responsibility for the case. Here, the United States Attorney's Office has shown no facts suggesting Ms. Wade had any responsibility for the case, either in an oversight or direct capacity, and the Magistrate Judge never made such a finding. Therefore, had the Magistrate Judge based his opinion on this ground, his opinion would be clearly erroneous. Accordingly, the Court assumes that the Magistrate Judge's ruling was based on Rule 1.11(b) and not Rule 1.11(a).

8

has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards." On the other hand, as the comment provides, this need must be balanced against, "the risk . . . that power or discretion vested in a public authority might be used for the special benefit of a private client," and the fact that "an unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." Ga. Rules of Prof'l R. 1.11 cmt. 3. Further, Comment 7 to Georgia Rule of Professional Responsibility 1.11 explains that "[p]aragraph (b) operates only when the lawyer in question has knowledge of the information, which means <u>actual knowledge</u>; it does not operate with respect to information that merely could be imputed to the lawyer." (emphasis added.)

This Court does not take the disqualification of an attorney lightly. Because the Magistrate Judge correctly construed this Motion as a Motion to Disqualify Counsel, under both state and federal law, the burden of proving a conflict fell upon the Government. <u>In re BellSouth Corp.</u>, 334 F.3d 941, 961 (11th Cir. 2003), <u>Duvall v. Bledsoe</u>, 274 Ga. App. 256, 258, 617 S.E.2d 601, 604 (2005). That is, the Government must show that Ms. Wade has actual knowledge

of information that was confidential at the time the "Motion for Inquiry" was filed.

The Government offered two witnesses to carry their burden. The first witness was the case agent in this case, Agent Joshua W. Hayes. (Doc. 100, Ex. 3, Transcript of Mar. 18, 2009 Hearing at 4.) Mr. Hayes testified that he "very frequently . . . ha[d] numerous conversations with many of the AUSAs, and a lot of times those AUSAs [were] not connected to a case in any way as a lead prosecutor or assistant prosecutor." (Id. at 5.) He further testified that when "having a conversation with an AUSA, . . . I drop my guard a little bit . . . because I presume that that is a conversation which is confidential in nature and would not be privy to the outside world." (Id. at 8.) However, on cross examination he conceded that he "[could] not recall the details of [the] conversations" and repeatedly testified that he could not recall any specific confidential information he disclosed. (Id. at 13-20.) Instead, he assumes that he would have disclosed such information to Ms. Wade because he had a practice of disclosing confidential information to uninvolved AUSAs. (Id. at 13-20.) He further testified that he is sure he would have disclosed the location of the business involved

10

in this criminal case, but could not specifically recall when he did so. (See id. at 15-16.)

The second witness was the AUSA for this case, Mr. Brian McEvoy. Mr. McEvoy testified in much the same way as Mr. Hayes—that is, he assumes Ms. Wade has confidential information, but could identify almost no specific confidential information that Ms. Wade was given. Mr. McEvoy testified that he discussed all of his cases with all the "various AUSAs who [came] into his office" and that he had a display of the case as he understood it in his office throughout the investigation. (Id. at 23-24.) Mr. McEvoy testified that he would have covered this board when Ms. Wade came into his office for casual conversation had she been a defense attorney in this case. (Id. at 25.) Mr. McEvoy further testified that he talked to Ms. Wade about the following subjects: (1) the clothes Mrs. Rasco was wearing at her arraignment, (2) the superseding indictment, and (3) the pictures of the Defendant on Mr. McEvoy's board, thus disclosing the Defendant's identity. (Id. at 27-35.)

When the Magistrate Judge considered this testimony, he never analyzed whether the confidential information proffered by the Government remained confidential at the time the Motion was filed. (Doc. 92.) In failing to do

11

so, the opinion was in error. See Ga. Rules of Prof'l R. 1.11(e) (requiring that the information be confidential "at the time the rule is applied" for a disqualification to occur under this rule). Had the Magistrate Judge considered this requirement, it would have been clear that the Government's factual proffer, as it stood, was insufficient to support a disqualification as all of the alleged confidential information had ceased to be confidential by the time the "Motion for Inquiry" was made. First, the Magistrate Judge and the Government mistakenly believe that Ms. Wade's comment made about Mrs. Rasco's attire at her arraignment supports a finding of confidential information. Of course, what clothes a person wears to a public hearing is not confidential and cannot support a finding that Ms. Wade possesses confidential information. Second, the three specific pieces of confidential information alluded to by the Government—the identity of the Defendant, the location of Defendant's business, and the superseding indictment—were all a part of the public records of this case by the time this Motion was filed and, therefore, no longer confidential. (Compare Doc. 38 at 1 (superseding indictment, filed October, 9, 2008, naming Defendant and the location of his business), with Doc. 76 (appearance by Ms. Wade, filed January 27,

2009).) Accordingly, even taking the specific allegations of the Government as true, they do not form the basis for a disqualification under Rule 1.11.[6]

---

[6] The Magistrate Judge's Order provides little explanation as to how, or why, he reached his factual conclusion that Ms. Wade had confidential information. (Doc. 92 at 7.) As the Court has already noted, any specific items of confidential information proffered in the record were no longer confidential at the time of the Motion and, therefore, inapplicable to a Rule 1.11(b) analysis. It is possible that the Magistrate Judge credited the vague assertions of the AUSA and case agent that Ms. Wade possessed unspecified confidential information because these individuals had a practice of divulging confidential information to numerous AUSAs who were in no way responsible for the relevant case. However, accepting this argument inexorably leads to the conclusion that every AUSA possesses confidential information on every case that any attorney has in the United States Attorney's Office. (See id. at 8-9 (testimony by Mr. Hayes that he divulged confidential information repeatedly and indiscriminately to numerous AUSAs for the purpose of soliciting opinions from AUSAs involved and uninvolved with his cases), id. at 24 (testimony by Mr. McEvoy stating that he discussed confidential information with respect to all of his cases with a "parade" of AUSAs who happened to stop by his office).) Clearly, this cannot be correct.
    Moreover, to accept the above premise as sufficient and crediting the Government's smoke and mirror show, the Magistrate Judge would have had to put a gloss on Rule 1.11(b) that would be contrary to law. That is, for this testimony to satisfy the Government's burden, the Rule would have to be so expansive that anyone who works in the United States Attorney's Office could be disqualified from any case that any other AUSA had at any time while the parting attorney was employed by the Government—effectively choking off any ability for a parting prosecutor to enter the private sector with a continued career in criminal law. This is contrary to the purpose of the rule as stated in Comment 3, which provides that the Rule "should not be so restrictive as to inhibit transfer of employment to and from the government." Ga. Rules of Prof'l R. 1.11 cmt. 3. Even balancing "the risk . . . that power or discretion

13

However, at the hearing in which Mr. McEvoy testified, the Magistrate Judge instructed Mr. McEvoy to relate specific confidential information "without compromising" the prosecution. (Doc. 100, Ex. 3, Transcript of Mar. 18, 2009 Hearing at 28.) This instruction may have stopped Mr. McEvoy from testifying as to any currently confidential information that would support his Motion; and, even if it did not, the Court could understand Mr. McEvoy's unwillingness to divulge presently confidential information in a public hearing. However, it remains that the Government has a burden to satisfy, and under the law as correctly interpreted, they have offered no evidence that meets that burden. Accordingly, the Court **ORDERS** the **United States Attorney's Office** to provide, for in camera review, a signed and sworn affidavit (or other proof), stating **exactly** what information Ms. Wade possesses that is currently confidential and **specifically** how she obtained that information. Generalized accusations that Ms. Wade

---

vested in a public authority might be used for the special benefit of a private client," and the fact that "an unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service," does not make the above gloss on the rule reasonable. Id. Although the Court cannot determine whether the Magistrate Judge relied on the Government's vagaries in rendering his opinion, to the extent that he did, the Court finds the opinion to require an untenable interpretation of the rule and, therefore, contrary to law.

possesses such information are not sufficient to carry the Government's burden. See supra n.5. The United States Attorney's Office will have **ten (10) days** to provide this documentation to the Court. After reviewing the Government's submission, the Court will issue a final ruling on this matter. If the United States Attorney's Office fails to provide such a document, the Court will assume the Office possesses no such evidence, and will rule on the Motion on that basis.

SO ORDERED this 29th day of June, 2009.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA