# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR408-100 |
| | ) | |
| ALFREDO FELIPE RASCO, NIURKA RASCO, RICCY MEDEROS and IRIS OSWALD, | ) ) ) | |
| Defendants. | ) | |

## ORDER

Previously in this Medicare fraud case the Court ruled that it must conduct an evidentiary hearing on defendant Alfredo Rasco's claims that the government (1) improperly used his immunized testimony in securing his indictment, in violation of *Kastigar v. United States*, 406 U.S. 441 (1972) and Fed. R. Evid. 410, and (2) advanced perjury before the grand jury and intentionally misled the Court during a prior evidentiary hearing. Doc. 155 (Order of Nov. 20, 2009, reported at 2009 WL 4040601). In that Order, the Court directed the government to make its initial *Kastigar* showing (affirmatively establishing that none of the

evidence presented to the grand jury was derived directly or indirectly from any immunized testimony) and respond to Rasco's misconduct allegations in a pre-hearing brief. The Court invited Rasco to file a single response, to which the government was permitted to file a single reply. The government has complied, doc. 171, Rasco has responded, doc. 185, and the government has replied. Doc. 186.

One matter is worth reaching now, given the showing made in those briefs: Rasco's incendiary accusations that the government advanced perjury before the grand jury by stating that a key witness (Dr. Wilbert Jenkins) had been interviewed, when he had not, and that it intentionally misrepresented during a hearing that a co-conspirator (Riccy Mederos) had been arrested and questioned before Rasco gave immunized statements to the investigators, when it knew Rasco's proffer came first. The government has, understandably, taken great offense at these allegations, and it has spent considerable time and effort in responding to them. Rasco, conversely, has devoted less than *two* pages in his responsive brief addressing the misconduct issues he so fervently argued in his earlier briefs. Doc. 185 at 22-23. And as the government

correctly notes, he has largely abandoned his original arguments. The Court is persuaded that Rasco's allegations of government misconduct are baseless, that it is unfortunate they were ever made, and that there is no need to conduct any further inquiry into this matter.

At a hearing conducted on August 31, 2009, the Court directed Rasco to submit a supplemental brief regarding certain legal and factual contentions that he raised for the first time at that hearing in support of his previously filed motion to dismiss the indictment. Doc. 127 (hearing transcript) at 41-42. Rasco's supplemental brief raised yet another series of new claims, including allegations that FBI Special Agent Tony Alig had committed "perjury" before the grand jury and that Alig and AUSA Brian Rafferty had made intentional misrepresentations to this Court during the earlier hearing, all in an effort to conceal the fact that the indictment rested on Rasco's immunized statements to the government investigators. Doc. 132. Although the government vehemently objected to these accusations, doc. 136, the Court—too hastily and without sufficient analysis it now appears—initially determined that Rasco's misconduct charges were not "utterly unfounded" and directed further

briefing and the submission of affidavits from Agent Alig and AUSA Rafferty.

As noted, Rasco's response to the government's comprehensive *Kastigar* brief barely touches on the serious allegations of government misconduct previously asserted to this Court. Indeed, that response makes no mention *whatsoever* of the prior allegation that Agent Alig and AUSA Rafferty deliberately misrepresented the facts concerning the date of Riccy Mederos's arrest and interview, and had a motive for doing so. Rasco has therefore abandoned this argument altogether.[1] And for good reason, for the government has demonstrated that it is meritless. In

---

[1] Rasco's counsel suggests in her brief that "she cannot even begin to respond to each and every allegation and argument raised" in the government's *Kastigar* brief and suggests that "[f]ailure to address any specific allegation or argument is not a concession to the accuracy of the government's argument or allegation . . . ." Doc. 185 at 1 n. 2. The Court rejects this contention outright. First, while counsel references the 25-page limit for briefs imposed by L.R. 7.1, she never sought relief from that page limit even though she specifically notes that the government had filed a 62-page brief, as well as lengthy affidavits, addressing her misconduct allegations. Nor did she seek additional time to prepare her brief in response to the government's rebuttal of the misconduct charges. Second, the government's refutation of the claim that it *lied to the Court* during the August 31, 2009 hearing is not some minor point that counsel might have overlooked: Rasco raised a serious claim of misconduct by the government's prosecutor and case agent, the Court treated those allegations seriously in its November 20, 2009 Order, and the government spent many pages in its brief and accompanying affidavits and exhibits responding to these inflammatory allegations. Defense counsel's failure to say *anything at all* about the government's showing constitutes an abandonment of this particular misconduct claim.

Rasco's initial "misconduct" brief, he contended that the government "needed to take [the] position" that Mederos had been arrested and interviewed prior to August 26, 2008 in order to conceal the fact that "the government was not aware of the details of Mederos's involvement in United Therapy until Mr. Rasco's second proffer in August 2008." Doc. 132 at 5, 6. The record, however, refutes Rasco's assertion that the government had a motive for asserting that Mederos had been arrested and questioned in April 2008 rather than August 2008. The government has demonstrated that: Mederos was arrested *before* Rasco gave his protected proffer on August 26, 2008; the affidavit for Mederos's arrest warrant establishes that the government knew a great deal about her involvement in the United Therapy fraud scheme before receiving Rasco's protected proffer; and the interviews of United Therapy employees had already established Mederos's central role in setting up the United Therapy business and in educating Rasco on how to defraud Medicare. Doc. 171 at 61; exs. 3, 5, 20, 25, 29, 30, 32, 33. The government has shown that its misstatement about the date of Mederos's arrest and questioning was an entirely innocent mistake made

by a prosecutor and agent who were relatively new to this complicated Medicare fraud prosecution, about a matter that they did not reasonably anticipate would even be addressed by the Court at that hearing. It is quite clear that defense counsel abandoned this argument because she recognized that, in light of the government's brief and affidavits, her position on this point was no longer defensible.

The remaining misconduct claim relates to Rasco's assertion that Agent Alig committed "perjury" before the August 5, 2009 grand jury (which returned the second Superseding Indictment) when he presented "knowingly false testimony" that Dr. Wilbert Jenkins had been interviewed and had offered information supporting the two counts of the indictment charging Rasco with misappropriating Jenkins's medical provider number in effectuating his scheme to defraud Medicare.[2] Doc.

---

[2] The August 5, 2009 grand jury transcript reflects the following exchange between AUSA Rafferty and Agent Alig:

Q. This might be a good time if we can turn to Counts Thirty-Two and Thirty-Three of the indictment. There are initials in there, W.J. Who is W.J.?

A. That's Wilbert Jenkins.

Q. And is he a medical doctor?

132 at 12, 21, 22. Rasco suggested that the agent had a motive to lie about this matter, for he well knew that the immunized statements made during Rasco's August 2008 proffer provided "the only source" of the government's information about Dr. Jenkins. *Id.* at 1, 12, 22; *id.* at 21 ("the government . . . made knowingly false statements to the grand jury

---

> A. Yes, sir. He is.
>
> Q. *He was interviewed during the course of this investigation?*
>
> A. *Yes, sir. He was.*
>
> Q. He confirmed that, with respect to the infusion of any of these drugs that you've described, that used his identifying information without his authorization or approval?
>
> A. That's correct.
>
> Q. And that's alleged in Count Four and in Count Five of the Indictment?
>
> A. Yes, sir. That's correct.
>
> Q. What did he say, if anything, about the infusion treatments that were going on at United Therapy?
>
> A. He stated that he did not perform them in the way that they were being claimed, and he did not perform them at all.

Doc. 132, Ex. 15 at 16 (emphasis added).

in an effort to [disguise] the actual source of information -- from Mr. Rasco."). Defense counsel represented that she had spoken to Dr. Jenkins, who stated that he had never been interviewed by any government official about Rasco or United Therapy. *Id.* at 11-12. This, of course, was a disturbing development, for it called into question the accuracy of Agent Alig's grand jury testimony.

Much has changed since Rasco made these inflammatory allegations. First, Dr. Jenkins has in a subsequent interview by the government indicated that he was "probably" interviewed prior to August 2008, and he has confirmed that he never authorized Rasco or his confederates to bill for infusion services under his medical provider number. Second, the government has demonstrated that whether Jenkins was interviewed or not, both AUSA Rafferty and Agent Alig firmly *believed* that he had been interviewed when they presented their case before the grand jury in August 2009, and that they had a sound basis for that belief. Third, defense counsel has *conceded* in her response to the government's *Kastigar* brief that Agent Alig believed Dr. Jenkins

8

had been interviewed, for he had been so advised by former AUSA (and then lead prosecutor) Brian McEvoy. Doc. 185 at 6.[3]

But Rasco has not quite given up upon this argument. While acknowledging the possibility that Dr. Jenkins was interviewed, and

---

[3] The Court confesses here that much of the information referenced in the government's *Kastigar* brief was available when it entered its Order of November 20, 2009, and that it was hasty, and indeed careless, in its analysis of Rasco's misconduct claims at that time. When that Order entered, the government had already established that: (1) Dr. Jenkins had since admitted that he had "probably" been interviewed and had confirmed that his identity was misused to bill for infusion services he had never authorized; (2) just a few days after the August 2009 grand jury proceeding -- and *before* defense counsel ever accused the government of eliciting false testimony before the grand jury -- AUSA Rafferty sent Agent Alig an email reflecting his belief that Jenkins had been interviewed and inquiring whether that interview had been memorialized; (3) in three prior grand jury sessions (in June 2008, September 2008, and October 2008) former AUSA McEvoy and another agent had presented similar testimony about Rasco's misuse of Dr. Jenkins's identity; (4) that long before Rasco's protected proffer of August 26, 2008, the government had developed extensive information from multiple sources that neither Dr. Jenkins nor any of the other physicians employed by United Therapy had any involvement with infusion services; (5) nevertheless, the doctors' provider numbers had been used to bill for such services without their knowledge or consent, all as part of the scheme to defraud Medicare. Doc. 136. The Court referenced only part of this information in its prior Order and, unfortunately, glossed over its significance. While the perjury allegations raised by Rasco certainly deserved further inquiry, and while they may not have been "utterly" unsupported, the Court should have emphasized the questionable nature of those allegations, the unblemished record of integrity and straight dealing exhibited by AUSA Rafferty and Agent Alig in all prior cases before this Court, and that the burden of proof was on Rasco to prove perjury, not on the government to disprove it. Further, the government has pointed out that the Court's Order gave the impression that it suspected government counsel and the agent of misleading the Court. While that was not the Court's intent, an impartial reader could have reached such a conclusion. The Court regrets its imprecise language and the shortcomings of its original analysis.

while not disputing the assertion by AUSA Rafferty and Agent Alig that they believed (and still believe) that Jenkins was interviewed prior to August 2008, Rasco reasons that since it remains unclear whether Jenkins was interviewed, the government engaged in a "pattern of misrepresentation" by continually suggesting to various grand juries that Dr. Jenkins had in fact been interviewed.[4] Doc. 185 at 22-23. The government correctly points out, however, that it is one thing to mistakenly misrepresent a fact before a grand jury and quite another to intentionally do so. The government has established that both Agent Alig and AUSA Rafferty actually *believed* that Jenkins had been interviewed and that they had a reasonable basis for that belief, for they had been told that by the former prosecutor and their review of the prior grand jury proceedings (proceedings conducted long before they ever became involved in the prosecution) naturally led them to that

---

[4] During the first grand jury session in June 2008, Agent Graupner never specifically testified that Dr. Jenkins had been interviewed, although AUSA McEvoy seemed to assume that he had been. Doc. 163, ex. 3 at 34-35 (transcript page nos. 53-54). And during a later grand jury session on Oct. 8, 2008 (when the government was seeking the first superseding indictment), Agent Alig seemed to assume that Jenkins had "confirm[ed]" that his provider number had been misappropriated, though his answer to AUSA McEvoy's question about this matter is unclear. Doc. 132, ex. 16 at 41 (transcript page 40).

conclusion.[5]  So, we are left with an unintentional misrepresentation -- if it was even a misrepresentation at all.

The Court finds to be unfounded any sort of implication or accusation that AUSA Rafferty—who was before and now remains one of the finest public servants to have ever graced this Court—knowingly advanced perjury before the grand jury or intentionally misstated anything to the Court during the August 31, 2009 hearing.  The same finding and comment applies to Agent Alig; the Court has never had cause to question his honesty and character, and it is regrettable that it has been forced to make this inquiry.  It is this Court's strict zero-tolerance policy to scrupulously confront *any* misleading statements, and not any doubt about the integrity of Mr. Rafferty or Mr. Alig, that warranted the government's formal response here.  The Court finds that

---

[5] Again, well prior to Rasco's protected proffer, the government had learned from United Therapy employees, who then so testified before the grand jury, that Dr. Jenkins "had no involvement" with infusion therapy. Doc. 171, exs. 3, 25. While it is unclear exactly when Dr. Jenkins first confirmed this information in an interview, what is clear is that Agent Alig had no motive to lie (for United Therapy employees had established the misuse of Jenkins's identity long before Rasco conceded the point during his proffer) and that he innocently (not perjuriously) testified to his belief that Dr. Jenkins had been interviewed.

no wrongdoing of any kind was committed by either of these government officials.

To summarize, the Court **DENIES** defendant Alfredo Rasco's government misconduct claims, as spread across various motions and briefs. Thus, they shall not consume any of the January 26, 2010 hearing time.

**SO ORDERED** this 25th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA