# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR408-100 |
| | ) | |
| ALFREDO FELIPE RASCO, | ) | |
| NIURKA RASCO, RICCY | ) | |
| MEDEROS and IRIS OSWALD, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this Report and Recommendation (R&R), the Court reaches assorted defense motions filed by defendants Alfredo and Niurka Rasco. Doc. 50, 61, 128, 157, 165, 168, 169, 170. These motions are in addition to those just addressed in the "*Kastigar*" R&R, entered earlier today. Doc. 198.

## I. ALFREDO RASCO

### A. Speedy Trial

Alfredo Rasco (Alfredo) contends that the twenty-month delay between his arrest and his as yet unscheduled trial violates his *constitutional* right to a speedy trial. Doc. 166. (He raises no claim

under the Speedy Trial Act, 18 U.S.C. § 3161.) The Sixth Amendment speedy trial right "attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." *United States v. Knight*, 562 F.3d 1314, 1323-24 (11th Cir. 2009) (quoting *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir. 1979)). Courts should consider

> four basic factors . . . in determining whether a defendant has been deprived of his constitutional right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). [The *Barker* Court] explained . . . that "[t]he first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." *United States v. Register*, 182 F.3d 820, 827 (11th Cir.1999) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). . . . A delay is considered presumptively prejudicial as it approaches one year.

*United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). Hence, if the delay is presumptively prejudicial, the Court applies the three remaining factors, but if the first three factors weigh heavily in the defendant's favor, then he need not show that he was actually prejudiced by the delay. *Id.*; *United States v. Harris*, 376 F.3d 1282, 1290 (11th Cir. 2004).

Here, Alfredo's showing is deficient. He was subjected to nearly an eighteen-month delay between his arrest and the filing of his speedy trial motion on December 11, 2009. And such a delay is presumptively prejudicial. Too, Alfredo contends that the first three factors weigh heavily in his favor, so he need not show actual prejudice. Doc. 166 at 2. Nonetheless, pretermitting whether the first and second factors weigh against the government, the third factor ("defendant's assertion of the right") does not weigh in his favor because he simply did not assert it until he filed this motion.[1] *Dunn*, 345 F.3d at 1296-97 (while an eighteen-month delay between indictment and trial was presumptively prejudicial, the defendant's showing as to the third factor did not weigh in his favor since he did not raise his speedy trial right claim until more than twelve months after his indictment; accordingly, he was required to show that the delay actually prejudiced him).

---

[1] Alfredo never indicates that he asserted his right prior to the filing of his motion. Doc. 166. Instead, he fixates upon the presumptively invalid delay and the government's contribution to that delay through the filing of multiple superseding indictments, then simply states that he "asserts his right to a speedy trial, which also weighs heavily against the government." *Id.* at 2-3.

3

Alfredo makes no attempt to show that he was actually prejudiced by the delay. Since he has not shown actual prejudice, his motion to dismiss for violation of his Sixth Amendment right to a speedy trial (doc. 166) should be **DENIED**.

## B. Vindictive Prosecution

Alfredo next moves to dismiss Counts 1-12, 50-51 and 54 of the latest indictment against him. With those counts, he contends, the government enhanced its charges against him in retribution for vigorously asserting his Fifth Amendment ("*Kastigar*") and other rights. Doc. 165.

The parties agree that the next to last indictment (there have been a total of 4, docs. 11, 38, 118, 137) charged Alfredo with one count of conspiracy in violation of 18 U.S.C. § 371 (general conspiracy statute), thirty counts of healthcare fraud in violation of 18 U.S.C. § 1347, and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. Doc. 118 (Second Superseding Indict.) Hence, it carried a total of 34 counts. Doc. 118. The most recent indictment, however, charged him with one count of healthcare fraud conspiracy (in violation of 18 U.S.C. §

1349), 54 counts of healthcare fraud, and four counts of aggravated identity theft—59 total counts.[2]  Doc. 137.  Alfredo concedes that the changes could have been brought earlier.  For instance, the government broke down 8 prior "consolidated counts" into 18 separate charges (e.g., Count 5 became Counts 13-16), for a net gain of 10 counts.  Doc. 165 at 2 n. 4.  He thus "does not challenge the separation of [those 8] counts as a product of prosecutorial vindictiveness."  *Id.*

He does, however, challenge as vindictive the "*fourteen new* health care fraud counts, based on alleged fraudulent billing on different dates and amounts, that do not appear in any of the earlier indictments."[3]  *Id.* And he contends that the conspiracy count, the first charge, was improperly changed from a general conspiracy charge under 18 U.S.C. § 371, which packs a five-year sentence, to a health-care-fraud conspiracy

---

[2]  Alfredo says the indictments show a step-up of 34 to 59 counts against him while the government says the number went from 33 to 58.  Doc. 165 at 2 n. 2; doc. 176 at 2.  The Court interprets the latest indictment as charging Alfredo with one count of Health Care Fraud Conspiracy, doc. 137 at 4-9, 53 counts of Health Care Fraud, *id.* at 9-12, and 4 counts of Aggravated Identity Theft.  *Id.* at 12-14.  That totals 59 counts, doc. 137, which means Alfredo is correct.

[3]  However, he concedes that the government could have charged him for those crimes in its first indictment.  Doc. 165 at 3 n. 6.

charge under 18 U.S.C. § 1349, carrying a ten-year sentence.  Doc. 165 at

2 n. 4.

The parties do not dispute the basic outlines of a vindictive

prosecution claim, which at bottom

> involves the government's attempt to punish a defendant for
> exercising a protected statutory or constitutional right. *See United
> States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74
> (1982). It is well established that a prosecutor violates a criminal
> defendant's due process rights if he exacts a price for the
> defendant's exercise of a clearly established right or punishes him
> for doing what the law plainly entitles him to do. *See Id*. at 372;
> *Blackledge v. Perry*, 417 U.S. 21, 28-29, 94 S.Ct. 2098, 40 L.Ed.2d
> 628 (1974). "To punish a person because he has done what the law
> plainly allows him to do is a due process violation of the most basic
> sort, and for an agent of the State to pursue a course of action
> whose objective is to penalize a person's reliance on his legal rights
> is 'patently unconstitutional.' " *Bordenkircher v. Hayes*, 434 U.S.
> 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (citations omitted).
> To establish actual prosecutorial vindictiveness, a defendant must
> show, through objective evidence, that the prosecutor acted with
> genuine animus toward the defendant and that the defendant
> would not have been prosecuted but for that animus. *See Goodwin*,
> 457 U.S. at 380 n. 12. In order to make the required showing, a
> defendant must demonstrate that additional charges were brought
> "*solely* to 'penalize' the defendant and could not be justified as a
> proper exercise of prosecutorial discretion." *Id*.

*Hellon v. Felker*, ___ F. Supp. 2d ___, 2010 WL 396365 at * 5 (E.D. Cal.

Jan. 27, 2010) (emphasis added).

Other courts have watered down the "solely" requirement.[4]  Thus it has been said that a defendant like Alfredo can show prosecutorial vindictiveness in two ways: (1) by proving, "through objective evidence, that a prosecutor acted *in order to* punish him for standing on his legal rights[,"]; or (2) by relying, in certain circumstances, on a presumption of vindictiveness, thus requiring the government to rebut it "with objective evidence justifying the prosecutorial action."  *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (emphasis added); *United States v. Barner*, 441 F.3d 1310 (11th Cir. 2006) (does not use the word at all in analyzing the availability of a pretrial presumption of vindictiveness). Citing cases like *Meyer*, *Goodwin*, and *Barner*, Alfredo concedes that it is "exceedingly difficult" to prove actual vindictiveness but insists he has made that showing, warranting dismissal.  Doc. 165 at 9-10.   He cites

_____

[4]  It appears only in two *Goodwin* footnotes:  "A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution. *See* Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 CALIF.L.REV. 471, 486 (1978)." 457 U.S. at 380 n. 11.   And: "The fact that the prosecutor threatened the defendant did not prove that the action threatened was not permissible; the prosecutor's conduct did not establish that the additional charges were brought solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion." *Id.* at n. 12; *see also United States v. Goff*, 2009 WL 223369 at * 5 n. 2 (M.D.Ala. Jan. 29, 2009).

"circumstantial evidence of actual vindictiveness," *id.*, but circumstantial evidence is simply not enough.

In fact, to prove actual vindictiveness, Alfredo must present *direct evidence* that the government acted solely to punish him for exercising his legal rights and that the most recent indictment with its "stepped up" charges was the result of that animus. Direct evidence of actual vindictiveness basically means a "statement by the prosecutor, which is available 'only in a rare case.' *United States v. Johnson*, 171 F.3d 139, 140-41 (2d Cir.1999) (*quoting United States v. Goodwin*, 457 U.S. 368, 380-81 & nn. 12-13, 384 & n. 19 (1982))." *United States v. In Hyuk Kim*, ___ F. Supp. 2d ___, 2009 WL 5033934 at *4 (D. Guam Dec. 8, 2009); *United States v. Saltzman*, 537 F.3d 353, 364 (5th Cir. 2008); *United States v. Lopez*, 414 F.3d 1208, 1211 (9th Cir. 2006) (a defendant must show direct evidence of actual vindictiveness); *United States v. Johnson*, 221 F.3d 83, 94 (2nd Cir. 2000) (a finding of "actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor. . . ."); *see Goodwin*, 457 U.S. at 380-81 ("Unlike *Bordenkircher* [*v. Hayes*, 434 U.S. 357 (1978)], however, there is no

evidence in this case that could give rise to a claim of *actual* vindictiveness; the prosecutor never suggested that the charge was brought to influence the respondent's conduct."); *see also Hyuk Kim*, 2009 WL 5033934 at *5-6 (finding actual vindictiveness when defendant presented direct evidence of an improper motive; on the record, the prosecutor made statements like "[y]ou file motions in this court, and we start looking for more charges to bring" and "we are punishing him for filing those motions, and that's the truth."); *cf. Ferell v. United States.*, 198 F.3d 245, *5 (6th Cir. 1999) (table) ("a defendant must demonstrate actual vindictiveness on the part of the resentencing judge, a showing which requires direct evidence").

Absent a substantial showing of actual vindictiveness, the Court need not even hold a hearing on the matter. *United States v. Falcon*, 347 F.3d 1000, 1005 (7th Cir. 2003) (no hearing required where defendant filed motion in limine and sanctions, the district judge admonished the prosecuting attorney at the hearing on the motion for sanctions, and then filed additional charges; "Without additional evidence that the prosecuting attorney harbored ill will against [defendant], the timing of

the . . . charge is not enough to shift the burden to the government or require a hearing."); *United States v. Woods*, 1987 WL 17775 at *2 (N.D.N.Y. Sept. 30, 1987) ("defendant has the burden of affirmatively demonstrating that there is sufficient evidence of *actual* vindictiveness on the part of the Assistant United States Attorney to warrant a hearing on the matter"); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007) ("To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such [i.e., facts giving rise to the presumption].") (quotes and cites omitted)); *see also United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009) (applying same basic reasoning in the context of the government's denial of a 5K1.1 substantial assistance motion and holding that fact-finding was not required because the defendant did not make a "substantial showing" that the prosecutor acted with an improper motive).

Here Alfredo basically advances a circumstantial vindictiveness claim—that the charges were not increased *until* he asserted his *Kastigar* rights and claimed that the government's attorney and lead case agent

committed perjury and other misconduct. Doc. 165 at 9-10. Additionally, he asserts that the case was extremely contentious and that the government (cagily) used an extension of time to file a response brief to secure an additional indictment, and that it waited until his assertion of rights before seizing his boat. *Id.* at 3-7. The government even made personal references to defense counsel in its briefing and moved to disqualify her because she had recently been employed by the United States Attorney's office. *Id.* at 7-8, 9-10.

None of these facts, however, present the kind of direct evidence that would necessitate a hearing, much less support an actual vindictiveness finding. (For example, Alfredo cites no authority preventing a prosecutor from requesting an extension of time to file a brief and then seeking a new indictment during that delay, even though the latter purpose was never stated). Hence, Alfredo's claim can only survive if he shows that he is entitled to a *presumption* of vindictiveness, which then requires the government to rebut it. He argues that he is so entitled. *Id.* at 10-15.

That "presumption" area of vindictive prosecution case law, however, is riddled with subtle distinctions. They arise from the fact that courts must, on the one hand, respect prosecutorial discretion, yet on the other protect a defendant's exercise of rights from being chilled. Hence, courts apply the presumption where charges are stepped up after reversals and appeals, but generally not during the *pretrial* phase of a criminal case. *See generally* WAYNE R. LAFAVE, 4 CRIM. PROC. § 13.7(c) (*Vindictive charge selection*) (3d ed. Nov. 2009); FEDERAL TRIAL HANDBOOK CRIMINAL § 12:41 (*Vindictiveness as a defense*) (4th ed. Nov. 2009) ("The presumption of improper prosecutorial vindictive motive is applicable only where a reasonable likelihood of vindictiveness exists. A change in the prosecutor's charging decision made before trial is less likely to be improperly motivated than where such a decision made after an initial trial."); *Bordenkircher*, 434 U.S. at 363-65 (there are due process concerns when a defendant is punished for exercising his rights, but they do not apply in the context of plea negotiations because the defendant is free to accept or reject the plea; so, a prosecutor may threaten to bring additional charges unless the defendant enters a plea);

63C Am. Jur. 2d *Prosecuting Attorneys* § 23 (Aug. 2009) ("The vindictive prosecution doctrine thus has no application in a pretrial setting, since at that stage, the prosecutor's assessment of the proper extent of prosecution may not yet have crystallized.") (footnote omitted).[5]  As noted by the Supreme Court,

> [t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins-and certainly by the time a conviction has been obtained-it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be

---

[5]  Though relatively rare, there are cases where the presumption is applied pretrial. *See* LaFave, 4 Crim. Proc. § 13.7(c) n. 44 (*Vindictive charge selection*) (3d ed. Nov. 2009) ("*United States v. Meyer*, 810 F.2d 1242 (D.C. Cir.1987) (such is the case here, as 200 political demonstrators all "participated in the same demonstration and conducted themselves in the same manner," yet those "who chose to go to trial faced two charges, whereas the other defendants confronted only one," creating a suspicion of vindictiveness heightened by the "simplicity and clarity of both the facts and law"); *see also Turner v. Tennessee*, 940 F.2d 1000 (6th Cir. 1991) (presumption of vindictiveness where prosecutor who offered plea agreement of 2 years imprisonment before first trial refused to offer plea agreement of less than 20 years on retrial)."). Of significance to the *Meyer* court was the fact that each defendant who elected to exercise their right to a jury trial had no meaningful notice of potential increased charges, and no reason to anticipate them.  810 F.2d at 1248.

prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Goodwin*, 457 U.S. at 381. Thus, "a prosecutor's charging decision is presumptively lawful. *See Bordenkircher*, 434 U.S. at 364; *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)." *Hellon,* 2010 WL 396365 at *6.

Nevertheless, there is no per se rule against applying the presumption of vindictiveness in the pretrial setting, so long as "additional facts combine with this sequence of events to create such a realistic likelihood [that the prosecutor in fact is being vindictive]." *Meyer*, 810 F.2d at 1246; *see also Barner*, 441 F.3d at 1317-18 (noting that nothing prevents application of the presumption in the pre-trial setting, but it was not necessary to decide that issue there "because even assuming compelling facts could justify a presumption in a pre-trial setting, such facts would have to form a realistic likelihood of vindictiveness . . . . [and] [t]he factors cited by the district court and relied on by [the defendant] do not present that likelihood."). To invoke such a presumption, the circumstances must "pose a realistic likelihood

of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27; *Hellon*, 2010 WL 396365 at * 6. And if a presumption of vindictiveness is established, the burden shifts to the government to present objective evidence justifying its conduct. *Goodwin*, 457 U.S. at 374; *Hellon*, 2010 WL 396365 at * 6.

In *Barner*, on which Alfredo relies, doc. 165 at 9, the Eleventh Circuit acknowledged the general rule that a prosecutor may seek a superseding indictment at any time pretrial if he has probable cause to believe that the defendant committed the crime. But if the prosecutor's sole purpose is to harass the defendant, and thus punish him for exercising his rights, then relief is warranted. 441 F.3d at 1315-16. Thus, "a case *could* present additional factors that would make it appropriate to use the presumption [of vindictiveness] in a pre-trial setting," but a defendant has to present "something more." *United States v. South*, 295 F. App'x 959, 967 n. 4 (11th Cir. 2008) (emphasis added) (citing *Barner*, 441 F.3d at 1317-1318).

While the "something more" requirement remains ill defined by the case law, including *Barner* itself, the defendant in *Barner* nevertheless failed to meet it. 441 F.3d at 1318-19. Barner had

vigorously litigated his constitutional rights pretrial, and had won, inter alia, the withdrawal of his guilty plea plus the dismissal of three of four "gun counts for multiplicity." *Id.* at 1313. To illustrate how subtle and elusive the distinctions can get in this area of law, and because *Barner* bears many parallels to this case, the Court will recount the *Barner* lower and appellate courts' analysis.

The district court in *Barner* ruled that a presumption of vindictiveness applied and granted relief on the government's failure to overcome it. The Eleventh Circuit recounted the facts and the district court's analysis:

> After conducting a hearing, the district court made no finding of actual vindictiveness, but determined that there should be a presumption of vindictiveness for the following reasons. First, the threshold conditions for such a presumption existed: Barner had exercised legal rights to withdraw his guilty plea and to challenge several counts of the indictment for multiplicity, and the prosecutor had subsequently increased the charges and the punishment for which Barner stood in jeopardy.[6] Second, after obtaining a continuance for the avowed purpose of securing

---

[6] Here it is undisputed that: (a) Alfredo has vigorously exercised his right to pretrial litigate his *Kastigar*, Due Process and other constitutional rights; and (b) the government, in its initial superseding indictments, did not enhance the charges against him; but (c) did do so in its latest indictment after Alfredo leveled *Kastigar*-related misconduct allegations against the prosecutor and his lead case agent.

witnesses for trial, the government in fact used the additional time to obtain the new indictment.[7] Third, the increased charges were not made in the context of plea bargaining, since the government made no plea offer to Barner between the time the charges in the Fourth Indictment were dismissed and the return of the Fifth Superseding Indictment and did not inform Barner that he would be reindicted.[8] Fourth, Barner's co-defendants, who pleaded guilty, received far lower sentences than the sentence Barner would receive were he convicted on all the charges of the Fifth Superseding Indictment.[9] In particular, the district court remarked that the ringleader and most culpable defendant, Johnathan Dale, had pleaded guilty to various charges of the Fourth Superseding Indictment and had been sentenced to 18 years' imprisonment. In contrast, the court calculated Barner's potential sentence under the Fifth Superseding Indictment at 103 years. Fifth, the district court compared Barner's potential sentence under the new indictment to his potential sentence under the old indictment after the multiplicitous counts had been dismissed, which it calculated at 12 years, rather than comparing all the prison time that the Fourth Superseding Indictment had originally charged, which the parties stated at the hearing would have been either something in excess of 107 years (according to the prosecutor) or 87 years (according to

---

[7]  The government here, Alfredo correctly points out, did essentially the same -- it sought "additional time to file its Supplemental Brief," doc. 133 at 1, yet during that time it sought and obtained its Third Superseding indictment. Doc. 137.

[8]  Again, essentially the same thing happened here. It is undisputed that Alfredo had no notice that another indictment was heading his way. Furthermore, unlike the government's prior attempts to cure claimed *Kastigar* defects by seeking a new indictment, this latest attempt sought to do that *and* added over 200 years' more sentencing exposure. (Still, as noted *supra*, Alfredo does not contest 100 years of that step-up from the 10 additional health care fraud counts that are not in dispute, with each carrying a 10-year, maximum sentence).

[9]  This has not occurred in this case. Only one co-defendant, Riccy Mederos, has pled guilty to a 15-year sentencing cap. Doc. 197 at 453.

Barner).[10] Sixth, the court compared the potential sentence under the new indictment to what Barner would have received under the plea bargain he rejected, which was 12 years. Based on these factors, the court concluded that there was a realistic likelihood of vindictiveness in the case.[11]

441 F.2d at 1314 (footnote omitted; footnotes added).

Reversing the district court, the *Barner* panel, again, saw no need to formally rule "whether the presumption [of vindictiveness] can ever arise in a pre-trial setting," *id.* at 1318, because Barner's facts failed to support it. Among the factors negating Barner's showing:

[T]he government contends that it had a legitimate interest in seeking to recharge the conduct that formed the basis of the dismissed counts. The prosecutor said at the hearing before the district court, "What the government has done that's different is [the magistrate judge] said the gun counts can't refer back to conspiracy. It's got to be linked to a crime of violence. So I addressed that by putting in the crimes of violence." The government's attempt to obtain a new indictment that would charge the conduct correctly is analogous to conduct we held

---

[10] That has occurred in Alfredo's case: a significant step-up in sentencing exposure, though arguably not in any prejudicial way given the original, lifespan-exceeding sentence. (As the government points out and Alfredo does not rebut, the prior indictment exposed him to 311 years and the latest, "vindictive" indictment exposes him to 558 years, so "the reality is that the addition or change of the charges in the Third Superseding Indictment would not make a whit's difference on his sentence upon his conviction." Doc. 176 at 2).

[11] Alfredo has not based any vindictiveness arguments on a comparison of "plea bargain" time versus non-plea-bargain time.

permissible in *United States v. Taylor*, 749 F.2d 1511, 1514 (11th Cir. 1985).

441 F.3d at 1319. Likewise, the *Barner* panel concluded, "the government's attempt to correct its earlier mistake and charge the conduct in a way that could support a conviction does not show a desire to punish Barner for exercising his rights, but rather to punish him for the alleged felonious conduct."[12] *Id.*

Nor was there a causal connection, the *Barner* panel further ruled, between Barner's successful withdrawal of his guilty plea a year earlier and the government's charge enhancement, as that was permitted under *Bordenkircher's* "give and take" analysis. *Id.* Next, the fact that Barner's pretrial litigation with the government had been "contentious" was not relevant because that occurs in plenty of criminal cases, *id.* at 1319-20 (citing *Goodwin*, 457 U.S. at 381), and Barner had adduced no "special facts that would show that the pre-trial history of [his] case was

_____

[12] Significantly, however, the panel did not explain how district courts are supposed to factfind on such explanations. Rather, it apparently simply accepted the prosecutor's explanation as true. So one interpretation here would be that any plausible explanation will be enough to dissuade a district court from granting a presumption in these circumstances.

so caustic that it could be expected to cause the prosecutor to behave improperly." *Id.* at 1320. Barner therefore had "not demonstrated that there was anything sufficiently unusual in the pretrial motions history of this case to distinguish it from *Goodwin*." *Id.*

"Thus, assuming a presumption could arise in the pre-trial context, in addition to the threshold showing of exercise of rights followed by augmentation of charges, Barner would have to identify *other factors* that would raise a realistic likelihood of vindictiveness." *Id.* at 1320 (emphasis added). There, too, Barner failed to make such a showing, for example, based on his pre- and post-plea bargain sentencing disparity and what his co-defendants received, since that is part of the normal give-and-take found in generic criminal cases. *Id.* at 1320-21. And even if the government misled the court in seeking a continuance to "secure a witness" when in fact its real reason was to obtain yet another superseding indictment, that, absent "other facts," can support some

other remedial measure, but not a vindictiveness presumption.[13]  *Id.* at 1321.  The fact that Barner and the government were not, at the final indictment phase, involved in plea negotiations also was not enough because the same thing happened in *Goodwin* and that was not enough.[14] *Id.* at 1321.

In sum, the fact that the government increases the maximum sentencing range is not enough to warrant a presumption that the government committed misconduct and that additional changes are not part of the normal give-and-take nature of pre-trial proceedings.  *See Saltzman*, 537 F.3d at 360 (the presumption only applies where there

---

[13]  The *Barner* panel never did pause to explain just what sort of "other facts" would place Barner over the goal line.  Hence, lower courts have been left without guidance on that score.

[14]  Even though Barner had failed to show enough to support a vindictiveness presumption, however, "*Goodwin* left open the possibility that a defendant not entitled to such a presumption might nevertheless be able to make a showing of actual vindictiveness."  *Barner*, 441 F.3d at 1322 (citing *Goodwin*, 457 at 384).  So, the panel remanded for district court to "make findings of fact as to whether the prosecutors were actually motivated by the desire to punish Barner for the exercise of his rights and whether the Fifth Superseding Indictment was the result of such animus."  *Id.*  But the panel did not even hint at what, in the record of that case, beckoned such an inquiry.  This omission is compelling since the panel had scoured the record and had just rejected the relatively *easier*-to-show, "presumption evidence."  And there was no indication that the district judge below had prevented Barner from adducing direct evidence of actual vindictiveness.

exists a "reasonable likelihood of vindictiveness," and there is no such likelihood when, in the context of the entire proceedings, any objective event or combination of events "should indicate to a reasonable minded defendant that the prosecutor's decision . . . was motivated by some purpose other than a vindictive desire to deter or punish appeals.") (citations and quotations omitted)).

Alfredo's mere invocation of his rights here, then, is simply insufficient to raise the presumption:

> a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

*Id.* at 382. Nor is the contentious nature of the litigation enough. *Barner*, 441 F.3d at 1319-20. Nor, for that matter, is the fact that the prosecutor had the majority of the evidence before him prior to his assertion of the new "trumped up" claims:

We recognize that prosecutors may be trained to bring all legitimate charges against an individual at the outset. Certainly, a prosecutor should not file any charge until he has investigated fully all of the circumstances surrounding a case. To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible—an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources. Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset.

*Goodwin*, 457 U.S. at 368 n. 14.[15] Far from suggesting a *likelihood* of vindictiveness, the facts here support, at most, a *possibility* of vindictiveness, and based upon the overwhelming weight of authority, the Court is satisfied that the presumption of vindictiveness does not

---

[15] Alfredo points out (and this has gone unrebutted) that all of the new charges could have been raised long ago, and that, as in *Meyer*, the defendant had no notice of potential increased charges and no reason to anticipate them when he filed his motion to dismiss, "particularly given the government's frequency before the grand jury and the reindictment of *same* charges each time." Doc. 165 13-14; *see Meyer*, 810 F.2d at 1246. He also notes that in *Meyer*, a mere change of prosecutors cannot negate the factors supporting such a presumption, for the *government* prosecutes, not any one prosecutor. *Meyer*, 810 F.2d at 1247-48; doc. 165 at 14. (footnote con't)...

*Meyer*, however, was a very different case—the prosecutor there treated every member of a large group of protestors differently based upon their decision to proceed to trial. "This disparate treatment rendered inapplicable much of the *Goodwin* court's discussion regarding an individual prosecutor's exercise of discretion. Further, the large number of defendants threatening to go to trial on petty offenses created a strong incentive for the prosecutor to discourage the assertion of legal rights. Neither of those two factors is present here." *Saltzman*, 537 F.3d at 363.

apply.[16]  Since the presumption does not apply, Alfredo's claim cannot

survive.[17]

---

[16] The Seventh Circuit had occasion to consider the presumption in an exceedingly
similar case to this one:

> Jarrett's argument can be succinctly summarized: He had a legal right and
> duty to provide a vigorous defense for his client, Dr. Bek. Because he had
> succeeded in getting the state's felony-murder charges dismissed, he
> embarrassed not only Lake County officials but also their federal partners in
> the Bek investigation—namely, the U.S. Attorney's office. The feds now had to
> take over the Bek prosecution, and—out of retaliation, or fear of Jarrett's legal
> acumen, or both—they wanted Jarrett sidelined by any means necessary. So
> they revived a case that had gone cold—the 3-year-old money laundering
> probe—and indicted him for the sole purpose of getting him off the Bek case.

*United States v. Jarrett*, 447 F.3d 520, 524 (7th Cir. 2006).  The district judge applied
the presumption of vindictiveness, but the appellate court reversed, noting:

> our own precedents have not recognized any circumstances in which a
> presumption of vindictiveness may be applied to events that took place before
> trial.  *See* [*United States v.*] *Spears*, 159 F.3d [1081, 1086 (7thCir. 1998)]
> (noting that the Supreme Court in *Goodwin* had "refused to extend" such a
> presumption and that the only way for a defendant to prove vindictiveness is
> through objective evidence); *see also* Wayne R. LaFave *et al.*, CRIMINAL
> PROCEDURE (3d ed.2000) (noting that in light of *Goodwin*, it is "unlikely" that
> a presumption of vindictiveness "has any application whatsoever in a pretrial
> setting"). Against this landscape we conclude that the district court committed
> legal error when it found such a presumption to be warranted in the
> circumstances of Jarrett's indictment.

*Jarrett*, 447 F.3d at 526.

Simply put, Alfredo's circumstantial evidence is not so highly persuasive that the presumption should apply. Recounting this case's contentious history, Alfredo notes that "the government first moved to disqualify his counsel and then, after the [August 31, 2009] motion hearing, seized his boat. [Alfredo] also exercised his right to due process by raising the issue of possible perjury as an additional basis to dismiss the indictment, which did not come to light until after the August 31st hearing. In response, the government accused [Alfredo's] counsel of sanctionable conduct and enhanced the charges against [him]." Doc. 165 at 9-10; *see also id.* at 3-7 (the government also sought a continuance from this Court "to file a response brief" but in fact used to time to secure a charge-enhancing fourth indictment in this case). He cites what he terms "the government's outrage" at some of the allegations he made prior to the latest indictment, *id.* at 7, plus the government's "break with custom" by "repeatedly refer[ing] to defense counsel personally. . . ." *Id.* at 7-8. (footnote cont'd)...

The government has tendered rather reasonable-seeming explanations for all of its allegedly vindictive actions. First, it rejects Alfredo's assertion that it is being vindictive because it lost its motion to disqualify his lawyer. Doc. 176 at 4. Next, it points out that it filed its Second Superseding Indictment *after* that loss *without* stepping up any charges. *Id.* Also, it argues that it decided on seizing the boat *prior* to Alfredo's first assertion of derivative-use *Kastigar* rights and his prosecutorial misconduct assertions. Doc. 176 at 4-5. As for his assertion that the government sought an extension to file a brief but instead used it to seek yet another indictment with the charge step-up, the current prosecutor (there was an earlier one who left for private practice) says he reviewed the case while drafting his brief and in doing so "decided that re-presentation of the indictment to the grand jury, without any reference to materials supposedly tainted by [Alfredo's] testimony, would be the easiest and cleanest way to handle [Alfredo's *Kastigar* issues]." *Id.* at 5. In other words, he contends, the re-indictment (and discerning that the same conduct could support even more counts and a higher-sentence conspiracy charge) was merely the product of legitimate litigation reassessment, not vindictiveness. These are plausible explanations that seem to satisfy *Barner.* 441 F.3d at 1319. (footnote con't)....

Finally, even if there was actual or presumed animus here, the government contends that Alfredo can show no prejudice because before and after this latest indictment he faced the same, beyond-a-lifetime sentencing exposure: over 100 years in prison. Doc. 176 at 2. Again, the prior indictment exposed him to 311 years and the alleged "vindictive" indictment exposes him to 558 years, so "the reality is that the addition or change of the charges in the Third Superseding Indictment would not make a whit's difference on his sentence upon his conviction." *Id.*

---

Finally, the government insists it "got personal" with Alfredo's lawyer (referring to counsel personally in its briefs, rather than to the client) to demonstrate its disdain for her tactics in accusing its prosecutor and lead case agent of perjury; but it did not do so to be vindictive toward her client. *Id.* at 6. While the Court makes no factual findings here, it notes that defendant's "outrage" argument seems to be overstated. In an affidavit in filed in response to Alfredo's motion to dismiss on *Kastigar* grounds, the prosecuting attorney explains that after losing on the motion to disqualify, but before pursuing the Third Superseding Indictment, he offered Alfredo a very favorable plea offer -- plead guilty to a single court of Health Care Fraud in violation of 18 U.S.C. § 1347 (maximum ten-year sentence). Doc. 171-14 at 8-9. The offer was the most favorable that the government had offered. Earlier, it had asked him to plead guilty to one count of conspiracy, 18 U.S.C. § 347, and one count of Health Care Fraud, 18 U.S.C. § 1347, carrying a combined maximum sentence of 15 years. In the Court's experience, an "outraged" prosecutor makes hot-headed decisions rather than first approaching with an olive branch. Admittedly, there is a *possibility* that the government acted vindictively in adding charges in the latest indictment after Alfredo's assertion of rights, but there is simply no "smoking gun" evidence indicating that it actually had done so or that it is even reasonably likely that it had done so (or enough to support a presumption that it had done so).

Noticeably, though, the government cites no authority to support its no-prejudice argument. Alfredo does not respond to it. The Court, however, has located *Lane v. Lord*, 815 F.2d 876, 879 (2d Cir. 1987), which found no presumption of vindictiveness despite additional charges following mistrial because the defendant was not exposed to any more serious criminal penalties. *Lane* fits here because before and after the latest indictment Afredo was exposed to beyond-lifespan incarceration. On top of that, the sentencing judge here can go beyond the indictment and upwardly increase (within statutory limits, *United States v. Valdes*, 319 Fed.Appx. 810, 814 (11th Cir. 2009)) Alfredo's sentence for both indicted and non-indicted harm (both to the government and private parties) that he caused. *See, e.g., United States v. Aenlle*, 327 Fed.Appx. 152, 155 (11th Cir. 2009) (district court did not clearly err in sentencing defendant convicted of conspiracy to submit false claims to Medicare for medically unnecessary medications by attributing loss amounts related to durable medical equipment claims from defendant's company and prescriptions claims from pharmacy to defendant, where durable medical equipment and pharmacy claims involved same victim as medication

claims, shared same purpose of defrauding Medicare, involved same modus operandi of submitting fraudulent Medicare claims, and involved common patients).

It is in that sense that, alternatively, Alfredo's motion can be denied for lack of prejudice. *Cf.* Fed. R. Civ. P. 61 (no prejudice for rights violated results in no relief). It is conceivable that adding repetition to a jury presentation (by adding some two dozen more counts) might unfairly bolster the government's case, as there is some risk that jurors faced with an indictment charging a defendant with violating a statute 50, versus 30 times, might be more apt to suppose that the defendant simply *must be* guilty of *something*. But nothing in the case law suggests that such speculation can support a vindictiveness claim.

For all of the reasons explained above, this motion (doc. 165) should be **DENIED**.

## C. Motion for Return of Property

Alfredo next moves the Court to order the government to return his boat to him. Doc. 128. Alleging that his wife purchased it "with the proceeds from the conspiracy and health care fraud violations," the

government seized it with a seizure warrant issued by this Court. Doc. 313 at 2. Under Fed. R. Crim. P. 41(g), "a person aggrieved ... by the deprivation of property may move [the district court] for the property's return." Rule 41(g).

Alfredo relies on Rule 41(g), doc. 128 at 5, and blends into his brief his vindictive prosecution assertions, basically claiming that the government long knew about the boat owned by his son, and yet the government seized it *only* after the Court's August 31, 2009 hearing, where he accused the government of misconduct and illuminated serious indictment defects. *Id.* at 1-8; *see also id.* at 8 (asking that "this Court condemn the government for its vindictive and calculated seizure of the boat and order the return of the boat to [Alfredo's] son.").

The government more or less ignores Alfredo's vindictiveness contentions and insists he invoked the wrong remedy, pointing out that Rule 41(g) is not now available to him. Doc. 131 at 2. "On September 1, 2009," it reminds, the FBI "commenced administrative forfeiture of the Boat." *Id.* That means a motion under Rule 41(g), it contends,

> is misplaced; Defendant's Motion was filed after the administrative forfeiture procedures started. Defendant and any

29

third-party who claims an interest in the Boat will have the opportunity to file a claim with the seizing agency upon receiving notice of the forfeiture as required by statute. 18 U.S.C. § 983. Furthermore, if [Alfredo] or a third-party files a claim with the seizing agency, the claim will be referred for judicial action. If a timely claim is filed, the government will have the option to file a civil complaint for forfeiture *in rem*, a Bill of Particulars to the instant indictment and/or a superceding indictment naming the Boat as forfeitable property. Both the criminal and civil forfeiture laws provide adequate remedies at law for Defendant and third-parties to contest the forfeiture in this action. Thus, because there are available adequate remedies at law, a Rule 41(g) motion is not the appropriate vehicle to challenge the forfeiture of the Boat.

Doc. 131 at 5.

The government is correct. The latest indictment shows that, pursuant to 18 U.S.C. § 982(a) and other statutes, the government seeks forfeiture of cash, the boat, and other real and personal property owned by the Rascos and Oswald. Doc. 137 at 16-18. In that respect,

[t]he Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") governs civil forfeiture actions (both judicial and administrative) initiated after August 23, 2000. *See* 18 U.S.C. § 983; Pub.L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983; *Mesa Valderrama v. United States*, 417 F.3d 1189, 1195 (11th Cir.2005). Property worth $500,000 or less is subject to administrative forfeiture without judicial involvement. *See* 19 U.S.C. § 1607. To commence an administrative forfeiture action, the government must comply with the notice requirements of 18 U.S.C. § 983 and 19 U.S.C. §§ 1607-1609. The government must send written notice of the seizure and information concerning applicable procedures to claim the seized

property to each person who may have an interest in the property. Additionally, notice of the seizure and intention to forfeit must be published once a week for at least three successive weeks "in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought." 21 C.F.R. § 1316.75; *see also* 19 U.S.C. § 1607(a). A person claiming the property may file a claim "not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure." 18 U.S.C. § 983(a)(2)(B). Upon receipt of a timely claim, the administrative proceedings end and the government may (among other options) seek judicial forfeiture by filing a complaint in federal district court. *See* 19 U.S.C. § 1608; 18 U.S.C. § 983(a)(3)(A)-(C); 21 C.F.R. § 1316.76(b); 21 C.F.R. § 1316.78. If no timely claim is filed, the government may declare the property forfeited. *See* 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77. The declaration of forfeiture has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609(b).

*VanHorn v. Florida*, ___ F. Supp. 2d ___, 2009 WL 605280 at * 3 (M.D. Fla. Mar. 9, 2009); *see also United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990) ("once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve [a Rule 41(g) motion]."); *Valderrama*, 417 F.3d at 1195 ("CAFRA sets forth the exclusive remedy for seeking to set aside a declaration of forfeiture

under a civil forfeiture statute. 18 U.S.C. § 983(e)(5) ('A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.'). Thus, a party seeking to challenge a nonjudicial forfeiture that falls within CAFRA's purview is limited to doing so under [Section 983(e) ].").

Alfredo does not rebut the government's showing that it seized the boat under this administrative process, which affords him a remedy, thus disentitling his use of Rule 41(g).[18] "A Rule 41(g) motion," for that matter, "is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband *or subject to forfeiture*, or the government's need for the property as evidence continues." *United States v. Cardona-Sandoval*, 518 F.3d 13, 15 (1st Cir. 2008) (emphasis added). And "[c]ourts typically only hear Rule 41(g) motions in civil forfeiture cases when the claimant has yet to be indicted or has not been subject to any type of criminal proceedings at

---

[18] Under CAFRA, "a motion to set aside a declaration of forfeiture under 18 U.S.C. § 983(e) is the 'exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.' 18 U.S.C. § 983(e)(5); *see also Valderrama*, 417 F.3d at 1195. Review 'is limited to determining whether the agency followed the proper procedural safeguards.' *Valderrama*, 417 F.3d at 1196." *VanHorn*, 2009 WL 605280 at * 4.

all." L. Levinson, FED. CRIM. RULES HANDBOOK FCRP 41 (2009 ed.) (footnotes omitted). Thus, Alfredo's motion for return of property (doc. 128) is **DENIED**.

### D. Severance

Finally, Alfredo moves to sever his case from his co-defendants. Doc. 50. In that his required showing on this motion is deficient in the same way as is Niurka's, the Court **DENIES** it on the same grounds as those set forth below in Part II(C).

## II. NIURKA RASCO

### A. *Miranda* Claim

Niurka moves the Court to exclude any statements made in the case, arguing that she "did not make any statement to any of the aforementioned agents voluntarily, nor was she advised of her Fifth Amendment right to remain silent, etc. as prescribed by" *Miranda v. Arizona,* 384 U.S 436 (1966) by arresting agents. Doc. 168 at 3; *see also* doc. 59 (earlier iteration of this same motion). The government says that at a hearing it will show that she was not in custody at that time, so this claim fails. Doc. 177 at 2. The government has flipped the burden here;

Niurka must allege that she was in custody to support a *Miranda* claim. She does not. Nevertheless, she raises a voluntariness claim. *See Jackson v. Denno*, 478 U.S. 368 (1964).

This motion could be denied because Niurka has failed to comply with the Court's local rules:

> 12.1 Form and Time for Filing Criminal Motions. Unless otherwise ordered by the Court, every motion filed in a criminal proceeding shall be accompanied by a memorandum of law citing supporting authorities. Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion. *Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted.*

L. Crim. R. 12.1 (emphasis added). However, the Court in its discretion will hear evidence from the government on this matter. Thus, motion # 168 is **DEFERRED** pending a hearing.

## B. Venue

In Niurka's Motion to Sever Defendant, she points to Count Sixty of the Third Superseding Indictment, where she is charged with one count of making false statements in violation of 18 U.S.C. § 1001:

> On or about July 9, 2008, in Chatham County, Georgia, within the Southern District of Georgia, and elsewhere, in a matter within the

34

jurisdiction of the Federal Bureau of Investigation ("FBI"), and agency of the United States, Defendant Niurka Rasco knowingly and willfully made a false and fictitious material statement, in that the defendant stated to an investigating FBI agent that she did not know who A.Y. was, when in truth and in fact as the defendant then well knew, A.Y. was the defendant's sister. . . .

Doc. 137 at 14-15 ¶ 40.

Boiled down, Niurka argues that this count should be carved out of the case and she thus should be tried on it in the Southern District of Florida, since she is alleged to have made this false statement at her home there. Doc. 170 at 2-8. Both she and the government cite the same case to support their contentions: *United States v. Ringer*, 300 F.3d 788, 791-92 (7th Cir. 2002), which found that venue for the offense of making false statements to federal officers (recanting an earlier statement implicating defendant's friends) was proper in the district where defendant's friends were indicted for drug trafficking offenses, even though defendant made the false statements in a different district, as defendant's false statements were material to his effort to halt that prosecution, and materiality of the statements was an element of the offense.

Federal Rules of Criminal Procedure 18 provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in the district where the offense was committed...." *Id.* And under 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."[19]

18 U.S.C. § 1001 criminalizes the making of any "materially false, fictitious, or fraudulent statement" as to a matter within the jurisdiction of the federal sovereign. Section 1001 crimes are continuing offenses, but § 1001 reaches only *material* false statements. With materiality a critical statutory element, the crime is continuing into the federal judicial district in which the effects of the false statement are felt. *United States v. Salinas*, 373 F.3d 161, 166-67 (1st Cir. 2004).

In *Ringer,* proving that the false statements to investigating agents made in one district were likely to affect the investigation in another was

_____

[19]  18 U.S.C. § 1001 lacks a venue provision, so the Court must apply 18 U.S.C. § 3237(a)'s general venue provisions. *United States v. Ospina*, 798 F.2d 1570, 1577 (11th Cir. 1986); *see also United States v. Pompano Helicopters, Inc.*, 2009 WL 1456745 at * 3 (S.D. Fla. May 22, 2009).

the keystone of the materiality of the statements made to the investigating agents. That was enough to satisfy § 3237(a). *Ringer*, 300 F.3d at 791-792. Here the government easily meets § 3237(a)'s requirement, because Niurka's lie to investigating agents in Florida materially affected the massive health care fraud she and her husband were advancing in Georgia: by lying to cover up payments made to her own sister, she further burdened law enforcement efforts by forcing agents to surmount her lie. Her motion is therefore baseless and should also be **DENIED.**

## C. Severance

Niurka next moves to sever her case from her codefendants, citing Fed. R. Cr. P. 14(a) and the Sixth Amendment. Doc. 61; *see also* doc. 132-3 (Aug. 31, 2009 hearing) at 47-57; doc. 169 (same motion, reiterated). The government opposes. Doc. 177 at 2-12; doc. 65 at 19-23. Citing *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001), Niurka claims that both Alfredo and codefendant Iris Oswald will testify that she was ignorant of the conspiracy and that her name was simply used without her knowledge or consent, so they will exculpate her on all but

the § 1001 charge.  Yet, she claims, neither will testify at a *joint* trial of

all codefendants.   Doc. 169 at 3-4.

The Court must apply the following factors:

> To establish the need for severance based on the defendant's desire
> to offer the exculpatory testimony of a codefendant, the defendant
> must first demonstrate: "(1) a bona fide need for the testimony; (2)
> the substance of the desired testimony; (3) the exculpatory nature
> and effect of the desired testimony; and (4) that the codefendant
> would indeed have testified at a separate trial." *United States v.
> Cobb*, 185 F.3d 1193, 1197 (11th Cir.1999) (citations and quotations
> omitted). [Eleventh Circuit] cases examining severance motions
> based on the need for a codefendant's exculpatory testimony "have
> often looked hard at the substance of *the affidavits proffered* by the
> co-defendant who purportedly would testify in a separate trial."
> *Novaton*, 271 F.3d at 989. Moreover, "statements concerning the
> testimony that would become available by severing trials must be
> specific and exonerative, rather than conclusory or self-serving, in
> order to justify severance." *Id*. at 990.

*United States v. Arneth*, 294 F. App'x 448, 451 (11th Cir. 2008) (emphasis

added); *United States v. Valadez*, 315 F. App'x 208, 211 (11th Cir. 2008)

(in drug conspiracy prosecution of two defendants, trial court was within

its discretion in deny one defendant's motion to sever trials to allow him

to call co-defendant as witness to testify that defendant had no

knowledge of the drug transaction and that he told defendant that they

were merely buying cars for resale in Mexico; co-defendant's proposed testimony was self-serving and conclusory).

Here the government correctly points out that Niurka provides few specifics about the alleged exonerative testimony other than the conclusory statement that her husband and Oswald will provide "exculpatory evidence." Doc. 177 at 7. Instead, she advances at best "bare exculpatory denials, devoid of specific exonerative facts." *Id.* And, she "has also failed to provide an affidavit from either Alfredo or Oswald, in which either Alfredo or Oswald indicate they would testify on behalf of Niurka, the specific and exonerative facts about which they would testify, and in which they incriminate themselves for their own roles in the charged offenses. The absence of any affidavit, and the absence of any specific exonerative facts, is fatal by itself to Niurka's Motion to Sever." *Id.* at 8. Under the above factors, the Court agrees. Niurka's "sever" motions (doc. 61, 169) are therefore **DENIED**.

## III. CONCLUSION

Accordingly, the Court **DENIES** Alfredo Rasco's motion for return of property. Doc. 128. It also **DENIES** as moot Iris Oswald's motion for

extension of time.  Doc. 157.  Alfredo's motion for discovery on the *Kastigar* issue is **DENIED**.  Doc. 180.  *See* doc. 196 at 17-21 (the Court ruled on this motion during the *Kastigar* hearing).   Next, the Court **DENIES** both defendants' motions to sever.  Doc. 50 (Alfredo's); docs. 61 & 169 (Niurka Rasco's).   The Court also denies Niurka's venue motion.  Doc. 170.  Her Motion to Exclude Statements is **DEFERRED** pending a hearing.  Doc. 168.  Finally, the Court should **DENY** Alfredo's vindictive prosecution motion, doc. 165, as well as his Speedy Trial motion to dismiss.  Doc. 166.  The Deputy Clerk shall promptly schedule a hearing on motion # 168.

**SO REPORTED AND RECOMMENDED this  8th**  day of March, 2010.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA