IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

U. S. DISTRICT COURT
Southern District of GA
Filed in Office

5/27/2010

Deputy Clerk

UNITED STATES OF AMERICA      )
                              )
v.                            )        CASE NO. CR408-100
                              )
ALFREDO F. RASCO, NIURKA RASCO, )
RICCY MEDEROS, and IRIS OSWALD, )
                              )
        Defendants.           )
                              )

## O R D E R

Before the Court are Defendants Alfredo Felipe Rasco's
("Alfredo") and Niurka Rasco's ("Niurka") objections (Docs. 211,
212, 216) to the Report and Recommendation and Order ("R&R") of
the Magistrate Judge (Doc. 200). The R&R addressed multiple
Motions, and Defendants have asserted multiple grounds of error.
For the reasons that follow, the R&R is **ADOPTED IN PART**, and
**MODIFIED** to be consistent with this Order. The Court issues the
following rulings: (1) the Motion to Dismiss for Violation of the
Sixth Amendment (Doc. 166) is **DENIED**; (2) the Motion to Dismiss
for Vindictive Prosecution (Doc. 165) is **DENIED**; (3) the Motion
for Discovery Regarding Vindictive Prosecution (Doc. 180) is
**DENIED**; (4) the Motion for Return of Property (Doc. 128) is
**DENIED**; (5) Alfredo's Motion to Sever (Doc. 50) is **DENIED**; (6)
Niurka's Motion to Exclude Statements (Doc. 168) is **DISMISSED AS
MOOT**; (7) Niurka's Motion to Dismiss for Improper Venue (Doc. 170)
is **DENIED**; and (8) Niurka's Motion to Sever (Doc. 169) is **DENIED**.

## BACKGROUND

The Rasco Defendants are charged with submitting approximately $5,600,000 in fraudulent claims to Medicare. (Doc. 137 at 3.) Allegedly, the Rasco's health care clinics were falsely billing Medicare for infusion therapy services. (Id. at 4.) Infusion therapy involves the administration of intravenous drugs, generally to treat HIV or AIDS. Here, it is asserted that the Rascos recruited HIV and AIDS patients to their practice for infusion therapy treatment. (Id. at 5.) Once in the practice, patients were provided with unnecessary medical services and Medicare was billed for more services than these patients actually received. (Id.)

The tortured procedural history of this case began on June 6, 2008 with the indictment of Alfredo and Niurka. (Doc. 11.) This indictment charged violations of 18 U.S.C. §§ 2, 371, 1347, and 1028A. At this time, the Assistant United States Attorney ("AUSA") prosecuting the case was Mr. Brian McEvoy. Alfredo retained, Mr. Alex Zipperer as his defense counsel, and Niurka was represented by Mr. Joshua Lowther.

Several months later, on October 9, 2008, a superseding indictment was entered. (Doc. 39.) The new indictment added 49 additional counts and a third Defendant, Riccy Mederos. (Id.) Niurka responded by asserting that venue was improper; that Miranda v. Arizona, 384 U.S. 436 (1966) had been violated; and

2

that severance was necessary. (Docs. 59, 60, 61.) Alfredo responded by asserting violations of Kastigar v. United States, 406 U.S. 411 (1972). (Docs. 68, 70.)

Two days before a Kastigar hearing was to take place, Alfredo changed his counsel from Mr. Zipperer to Ms. Julie Wade, an attorney who had recently left the United States Attorney's Office for the Southern District of Georgia ("USAO") for private practice. (Doc. 76.) The Government objected to the change of counsel, and the Magistrate Judge disqualified Ms. Wade. (Doc. 92.) That decision was appealed to this Court, which reinstated Ms. Wade. (Doc. 113.) Meanwhile, the AUSA on the case was changed from Mr. McEvoy to Mr. Brian Rafferty, and Riccy Mederos pled guilty. (Doc. 104.)

Subsequent to the conclusion of the Mederos plea and the appearances of new counsel, the indictment was again superseded. (Doc. 118.) The new indictment charged the same general crimes in only thirty-five charges and removed Mederos as a defendant. (Id.) The Parties continued to litigate the Kastigar issue, on which a hearing was held. (Doc. 125.) In addition, the Government seized a boat purportedly owned by Alfredo's son, which Alfredo demanded be returned. (Doc. 128.) The Parties continued to litigate the Kastigar issue subsequent to the hearing, and the AUSA eventually requested an extension of time to "fully address the issues raised in Defendant's Supplemental Brief." (Doc. 133.)

Without informing the Court, the Government subsequently decided that the extension of time would be better spent reindicting the case, and the AUSA filed a third superseding indictment instead of the promised response brief. (Doc. 137.)

The third superseding indictment added Iris Oswald as a defendant and increased the number of counts to sixty. (Doc. 137.) This was the final indictment. The Defendants responded to this indictment by alleging a slew of constitutional violations. These allegations generated over one hundred pages of R&Rs, divided into two opinions. (Docs. 198, 200.) Currently, the Court addresses the second R&R, an omnibus order addressing the non-Kastigar claims. (Doc. 200.)

## ANALYSIS

### I. Standard of Review

The R&R in this case is an amalgamation of orders and recommendations, the former issued pursuant to Federal Rule of Criminal Procedure 59(a) and the latter issued pursuant to Rule 59(b). Rule 59(a) empowers a magistrate judge to rule on matters that do "not dispose of a charge or defense." If objections are made to such rulings, "[t]he district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Id. Rule 59(b) allows a magistrate judge to issue a report and recommendation on a dispositive order. If a party files objections under Rule 59(b),

this Court "must consider de novo any objection to the magistrate judge's recommendation." On review, "[t]he district judge may accept, reject, or modify the recommended disposition, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Id.

II. Speedy Trial

The R&R recommends that this Court deny Alfredo's Motion asserting a violation of his constitutional right to a speedy trial. (Doc. 200 at 1-4.) Alfredo objects, contending that he has shown a speedy trial violation. (Doc. 216.)

There are "four basic factors that courts should consider in determining whether a defendant has been deprived of his constitutional right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant." United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003). The first factor is a triggering factor—no speedy trial violation can take place unless "some presumptively prejudicial period of delay occurred." Id. Further, if a defendant can show that the first three factors "weight heavily against the government," then the defendant need not show actual prejudice. Id. Here, the Magistrate Judge found that the length of delay triggered the full speedy trial inquiry. Making the full inquiry, the Magistrate Judge found that factor three did not weight heavily against the

5

Government, requiring Alfredo to show actual prejudice. Because Alfredo did not try to show prejudice, the Magistrate Judge recommended dismissing the Motion.

Alfredo objects, contending he does not need to show actual prejudice because factors one and two weigh so heavily against the Government that even if factor three is merely neutral, the balance of the factors renders a showing of prejudice unnecessary.[1] (Doc. 216.) However, this Circuit does not use a balancing test, instead "the defendant must demonstrate actual prejudice unless each of the first three factors weigh[s] heavily against the government." United States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004) (emphasis added). Therefore, even if this factor is "neutral," Alfredo must still show prejudice.

Alfredo also makes a half-hearted attempt to show prejudice, stating only that "[a]lready, Mr. Rasco has had to endure multiple superseding indictments as the government tried and repeatedly

_____

[1] Although less than clear, the objection may also be asserting that the Magistrate Judge erred in determining that the third factor did not weight heavily against the Government. However, if that is Alfredo's objection, it is in error. The crux of the third factor is the vigilance of the Defendant in asserting his speedy trial right. See Dunn, 345 F.3d at 1296 ("Nor, despite the fact that appellant moved to dismiss the indictment on constitutional and statutory speedy trial grounds, does it seem that Dunn was especially vigilant in asserting his speedy trial right."). In Dunn, a two month delay between the date the speedy trial claim became ripe and its assertion suggested a lack of vigilance, meaning that factor three did not weigh heavily against the Government. Id. Here, Defendant waited approximately six months to assert his speedy trial right. Accordingly, as in Dunn, this factor does not weigh heavily against the Government.

failed to abide by the terms of the Proffer Agreement." (Doc. 216 at 3-4.) Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker v. Wingo, 407 U.S. 514, 532 (1972). Three such interests have been identified: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. "Of these, the most serious is the last." Id. Alfredo's assertion of prejudice could easily implicate none of these interests, but the Court will understand it to be tangentially related to the second interest. (Doc. 216 at 3.) However, the assertion of prejudice could not be weaker. Indeed, it is not clear what it means to "endure multiple superseding indictments," or how this pressure is any different from other pressures that are normally attendant to a criminal prosecution. Accordingly, Alfredo has not shown prejudice and this objection is unavailing.

After a careful de novo review, and for the foregoing reasons, the Court finds Alfredo's objections unavailing. Therefore, the Court **ADOPTS** the recommendation of the Magistrate Judge with respect to Alfredo's assertion of his speedy trial rights, and **MODIFIES** that recommendation to include the above analysis. The Motion to Dismiss (Doc. 166) is **DENIED**.

II. Vindictive Prosecution

The Magistrate Judge recommends this Court deny Alfredo's Motion to Dismiss (Doc. 165), which seeks dismissal of the third superseding indictment for vindictive prosecution. The Magistrate Judge provided a lengthy analysis, considering whether there was either direct proof of vindictiveness or sufficient circumstantial proof to warrant a presumption of vindictiveness. (Doc. 200 at 7-25.) Ultimately, he found the proof insufficient to even warrant a hearing. The Magistrate Judge also provided an alternative basis for his conclusion: even if there was vindictiveness, Alfredo was not entitled to relief for lack of prejudice. (Id. at 26-28.) Alfredo objects to the following findings in the R&R: (1) that the presumption of vindictiveness is inapplicable; (2) that prejudice is required, and not shown; (3) that discovery was not warranted; and (4) that a hearing was unnecessary due to a lack of direct evidence. (Doc. 212.)

In support of his Motion, Alfredo proffers four pieces of evidence that he believes show a repeated pattern of Government retaliation for his assertion of Kastigar violations.[2] First, Alfredo contends that the Government retaliated when it attempted to disqualify his substitute counsel, Ms. Wade, on the eve of the

---

[2] In addition to the four items Alfredo identifies as evidence of vindictiveness, he also notes that the increased charges in the third superseding indictment could have been brought much earlier in this case. (Doc. 212 at 16.) However, as is explained infra Part II.A, this fact is of only minimal importance to a showing of vindictive prosecution.

Kastigar hearing. (Doc. 212 at 4-5.) Second, Alfredo contends that the Government retaliated when it seized his boat immediately after the Kastigar hearing. (Doc. 212 at 5-6.) Third, Alfredo points to the Government's disingenuous use of an extension of time. (Doc. 212 at 7-8.) Fourth, Alfredo points to a Government filing that took on a personal tone, unlike the Government's normal filings. (Doc. 212 at 9-11.) Alfredo contends that this evidence not only has individual significance, but also collective significance as evidence of repeated suspicious timing and prosecutorial malice. (Id.)

A.     Discovery Motion

Alfredo contends that the Magistrate Judge erred by denying the Motion for Discovery on Vindictive Prosecution. In the R&R, the Magistrate Judge stated that "Alfredo's motion for discovery on the Kastigar issue is **DENIED**. Doc. 180. See doc. 196 at 17-21 (the Court ruled on this motion during the Kastigar hearing)." (Doc. 200 at 40.) Reviewing the record of the Kastigar hearing, it is apparent that the Magistrate Judge denied discovery on the Kastigar issue and not the vindictive prosecution issue. (Doc. 196 at 17-21.) The R&R provides no other basis for the denial of this Motion. Accordingly, the Magistrate Judge erred and the Court **SETS ASIDE** that portion of the R&R.

Finding that the Magistrate Judge erred, the Court will consider the Motion anew. The standard for discovery in a

vindictive prosecution case appears to be a matter of first impression in this Circuit, and other Circuits use varying standards to determine when discovery is warranted.[3] Most Circuits require a defendant to "advance some evidence tending to establish his vindictive-prosecution claim" before discovery is permitted. United States v. Bucci, 582 F.3d 108, 113-14 (1st Cir. 2009); see also United States v. One 1985 Mercedes, 917 F.2d 415, 421 (9th Cir. 1990) ("[A] criminal defendant may be entitled to discovery if he or she establishes a prima facie showing of a likelihood of vindictiveness by some evidence tending to show the essential elements of the defense."); United States v. Wilson, 262 F.3d 305, 315 (4th Cir. 2001); United States v. Sanders, 211 F.3d 711, 717 (2d Cir. 2000) ("[T]o obtain discovery on a claim of selective prosecution, we have held that a defendant must provide some evidence tending to show the existence of the essential elements of the defense."). Other Circuits use slightly different formulations of this standard, including requiring a "credible showing" or a "colorable basis." United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004) ("In order to obtain discovery, Hirsch had to produce at least some credible showing of differential treatment of similarly situated members of other races or a protected class."); United States v. Utecht, 238 F.3d

---

[3] The Parties have cited no Eleventh Circuit case establishing the standard for discovery in a vindictive prosecution case (Docs. 180, 182, 212, 223), and the Court has found none.

882, 887 (7th Cir. 2001) ("In the areas of vindictive prosecution and selective prosecution, a defendant must show a colorable basis for his or her claim before discovery against the government is permitted.").

Rather than attempting to distinguish these standards, the Court looks to the treatment of discovery motions in an analogous situation—selective prosecution. Indeed, most Circuits to address the issue have held that the standard for discovery is the same for both selective and vindictive prosecution cases.[4] See, e.g., Bucci, 582 F.3d at 113 ("These courts derive this standard from . . . Armstrong . . . , in which the Supreme Court addressed discovery sought in support of a selective-prosecution claim. This is the standard that the district court applied in Bucci's case, and we adopt it here."); Wilson, 262 F.3d at 315-16 ("[T]he standard for ordering discovery on a vindictive prosecution claim is the same as that for ordering discovery on a selective prosecution claim.").[5]    That standard requires "some evidence

_____

[4] Alfredo concedes the applicability of Armstrong (Doc. 212 at 21) and the Government fails to address this issue (Doc. 182).

[5] Prior to Armstrong, the Circuits employed similar standards in selective prosecution and vindictive prosecution cases. Indeed, the "differing" Circuit standards clarified by Armstrong mimic the standards here. As the Supreme Court explained:

> The parties, and the Courts of Appeals which have considered the requisite showing to establish entitlement to discovery, describe this showing with a variety of phrases, like colorable basis, substantial threshold showing, substantial and concrete basis, or reasonable likelihood. However, the many labels for

11

tending to show the existence of the essential elements of the defense." United States v. Armstrong, 517 U.S. 456, 468 (1996). Accordingly, the Court will adopt the "some evidence" standard from Armstrong.

Despite the soft language of the standard, the required showing is actually quite "rigorous." Id. There is a difference between requiring some evidence and any evidence, especially when construing this standard as a rigorous one. For example, evidence that the prosecutor could have charged the crime earlier does not satisfy this requirement on its own and provides only minimal value in conjunction with other evidence. See Bucci, 582 F.3d at 114. Likewise, "evidence of suspicious timing alone does not indicate prosecutorial animus." Id. (quoting United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006)); see also United States v. Sanders, 17 F. Supp. 2d 141, 147-50 (E.D.N.Y. 1998), aff'd 211 F.3d 711 (2d Cir. 2000). On the other hand, a third party affidavit from a government insider satisfies the some evidence standard. United States v. Adams, 870 F.2d 1140, 1146 (6th Cir. 1989). When viewed in total, the evidence must show that the defendant "would not have been prosecuted absent a retaliatory

this showing conceal the degree of consensus about the evidence necessary to meet it. The Courts of Appeals require some evidence tending to show the existence of the essential elements of the defense.

Armstrong, 517 U.S. at 468 (internal quotations omitted). This explanation applies with equal force in the vindictive prosecution context.

motivation" for discovery to be compelled. United States v. Goulding, 26 F.3d 656, 662 (7th Cir. 1994). The Court now considers Alfredo's proffered evidence of vindictive prosecution individually and collectively.

i.  Motion to Disqualify

Alfredo's current attorney, Ms. Wade, became a part of this case as substitute counsel. Her initial appearance was on January 27, 2009, two days before the Magistrate Judge was scheduled to hold a Kastigar hearing. (Doc. 76.) One day after her initial appearance, the USAO filed a Motion to Disqualify Ms. Wade and sought a continuance of the Kastigar hearing. (Doc. 78.) Alfredo contends that the filing of this Motion immediately before the Kastigar hearing is the first piece of evidence that the Government retaliated against him "every time he tried to advance his argument that the government violated the Proffer Agreement." (Doc. 212 at 4-5.)

The Court cannot concur with Alfredo that the timing of this Motion suggests retaliation for the assertion of his Kastigar rights. There exists a far more obvious triggering event for the filing of this Motion—Ms. Wade's entry into the case. The Government could not have moved to disqualify Ms. Wade prior to her first appearance because such a Motion would be dismissed as premature. And, there is no requirement that the Government delay its Motion simply because it became ripe close to the time of a

hearing. The Government filed the Motion at the appropriate time, as soon as practicable after Ms. Wade's entry into the case. Therefore, the Motion is not suspicious.

Likewise, the Motion's content is not vindictive. While the Government's methods were dubious (Doc. 113 n.6), the Motion was not frivolous. As Ms. Wade concedes, she had recently departed from the USAO and worked there while it was prosecuting this case. (Doc. 212 at 4-5.) That alone creates a colorable substantive basis for the Motion. That the Motion ultimately proved meritless does not prove vindictiveness. Accordingly, this evidence has no value to the required showing.

### ii. Seizure of the Boat

Alfredo also finds vindictiveness in the timing of the seizure of a boat he registered in his son's name. (Doc. 212 at 6.) Specifically, Alfredo alleges that the Government waited until the Kastigar hearing to seize the boat despite knowing of its existence and having the opportunity to seize the boat much earlier. (Id.) The Government replies that it first learned of the boat in August of 2009 and the warrant was signed at the Kastigar hearing as a matter of convenience. (Doc. 176 at 5; Doc. 223 at 3.) While the Government's explanation of this series of events is plausible, the timing of these events could be considered suspicious. However, evidence of suspicious timing is

of limited value and does not entitle Alfredo to discovery on its own. Bucci, 582 F.3d at 114.

### iii. Misrepresentation about Continuance

Alfredo further contends that the Government made a misrepresentation when it asked the Court for an extension of time to file a reply brief to the Kastigar issues and then used that time to secure a third superseding indictment. (Doc. 212 at 8-9.) Alfredo suggests that this misrepresentation was intentional, but provides no proof for that assertion. (Id.) The Government responds that while considering its reply brief, it decided that the cleanest way to handle the Kastigar issue would be to seek a superseding indictment. (Id.) The Government contends that during that process, it increased the charges due to a legitimate litigation reassessment. (Id.)

Again, the actual evidence put forth by Alfredo shows suspicious timing and nothing more.[6] Alfredo's contention that

---

[6] In the R&R the Magistrate Judge appears to validate the actions of the USAO, which requested an extension of time to file a brief, and then, without informing the Court, used that time for an entirely different purpose—seeking a new indictment. (Doc. 200 at n.17 (referring to these actions as reasonable).) However, such conduct should not be condoned. When any attorney seeks leave of Court for a specific purpose, the Court expects that the time will be used in the manner represented. If facts asserted in a motion later become fallacious, it is the duty of the party who set forth those facts to correct them; perhaps doubly so for prosecutors whose function "is not to tack as many skins of victims as possible to the wall . . . [but rather] to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial." Donnelly v. DeChristoforo, 416 U.S. 637, 648-49 (1974) (Douglas, J. dissenting). That said, there is no evidence

this Motion was a well-conceived plan to buy time for a third superseding indictment has no evidentiary support whatsoever. While the timing of the third superseding indictment vis-à-vis the extension of time could be considered suspicious, there is again a perfectly logical explanation for these events. That is, when determining how to respond to Rasco's brief, the AUSA decided the best way to address the Kastigar issue was to reindict the case, during which a legitimate litigation reassessment occurred. Therefore, this evidence is, at best, evidence of suspicious timing, which has only minimal value. Bucci, 582 F.3d at 114.

### iv. Personal Attack

Alfredo contends that the Government's Motion for Sanctions, which addresses Ms. Wade personally, shows prosecutorial malice. (Doc. 212 at 9-10.) Alfredo finds malice in the tone of the Motion, which is unlike the Government's normal impassive and impersonal advocacy. (Id. at 10.) The Motion was filed in response to Ms. Wade's assertions that the AUSA had suborned perjury. The Government contends that the tone reflects not vindictiveness for Rasco, but rather "disdain for the tactics of Rasco's counsel." (Doc. 223 at 5-6.)

Government attorneys are not foot soldiers in the Queen's Guard, required to maintain a stoic composure in the face of

_____

that at the time the Motion was filed its contents were anything but truthful, and the failure to update the Court is at best evidence of laziness, not vindictiveness.

extreme circumstances. Even Government attorneys have a right to respond vigorously when their personal integrity is attacked. Ms. Wade should understand that accusing any attorney of suborning perjury, regardless of the merits of the accusation, bears directly on that attorney's professional integrity. The fact that the Government responded vigorously, or perhaps emotionally, is hardly surprising given her accusations. Moreover, the fact that the Motion directly addressed Ms. Wade shows that the AUSA was separating counsel from her client when responding to her accusations. Accordingly, this is not evidence of vindictiveness.

### v.   Collective View

Alfredo objects to the fact that the Magistrate Judge viewed the evidence piecemeal rather than collectively. (See Doc. 212 at 14-15 n.16.) Taken collectively, the evidence at best follows the same lines as the evidence in Bucci-suspicious timing and the prosecutor's ability to charge crimes earlier. 582 F.3d at 113-14. Just as the court in Bucci found this evidence insufficient to allow discovery, so to this Court finds Alfredo's showing wanting.

Whether his evidence is viewed collectively or individually, Alfredo cannot meet the standard required for discovery in this case. That is, his evidence does not meet the oxymoronic

"rigorous" burden of showing "some evidence."[7]   See supra Part II.A.  Accordingly, his Motion for Discovery is **DENIED**.

## B.   Presumption of Vindictiveness

Alfredo objects to the Magistrate Judge's conclusion that there is not a "realistic likelihood" of vindictiveness, a required finding for applying a presumption of vindictiveness. (Doc. 212 at 12-13.)  As explained above, Alfredo does not even possess sufficient evidence to satisfy the "some evidence" standard required for discovery.  Given that this Court has found that Alfredo is not able to meet the "some evidence" standard for discovery, it is axiomatic that he cannot meet the higher "realistic likelihood" standard required for a presumption of vindictiveness.

Moreover, after a careful de novo review of the law and evidence, both individually and collectively, with respect to the Magistrate Judge's decision not to apply the presumption of vindictiveness, the Court **CONCURS** in that portion of the Report and Recommendation, and **ADOPTS** the same as the Opinion of the

---

[7] In his brief, Alfredo seizes on the fact that the Magistrate Judge found that there was a possibility of vindictiveness, and assumes that this means that the Magistrate Judge would have found the "some evidence" standard to be met.  (Doc. 212 at 20-21.) This is incorrect; by saying there was a possibility of vindictiveness the Magistrate Judge was stating the obvious, in any case with a superseding indictment where charges are enhanced there is always a possibility of vindictiveness.  (Doc. 200 at 23.)  However, that there is a possibility of vindictiveness does not mean that Defendant has any evidence actually substantiating such a theory.

Court with the addition of the above analysis. Accordingly, the presumption of vindictiveness does not apply.

C. Direct Evidence

Alfredo contends that the Magistrate Judge erroneously required direct evidence of vindictive prosecution as a prerequisite for an evidentiary hearing. (Doc. 212 at 23-24.) However, as Alfredo concedes, the standard for a hearing is "something more than is required to obtain discovery, but something less than the evidence necessary to establish a presumption of vindictiveness." (Id. at 24.) This assessment of the law is correct. See United States v. Falcon, 347 F.3d 1000, 1004-05. As Alfredo has not made a sufficient showing to obtain discovery, see supra Part II.A, he has not made a sufficient showing to require a hearing. Accordingly, the request for a hearing is **DENIED** for this alternative reason.[8]

D. Prejudice

Alfredo also objects to the portion of the R&R that determined Alfredo cannot show prejudice from vindictive

---

[8] The Magistrate Judge denied the request for a hearing due to a lack of direct evidence. (Doc. 200 at 11 ("None of these facts, however, present the kind of direct evidence that would necessitate a hearing, much less support an actual vindictive finding.").) Alfredo is correct that the law does not require direct evidence. See Falcon, 347 F.3d at 1004-05. While the Magistrate Judge may be correct to extrapolate that direct evidence is required, that conclusion is not inexorably correct. And, treading onto that unstable ground is unnecessary because Alfredo is not entitled to a hearing regardless of whether direct evidence is required. Accordingly, the Court **SETS ASIDE** this portion of the R&R.

prosecution because while his actual maximum penalty rose from 311 to 558 years, his functional exposure remained a life sentence. The Government, citing no case law, argues that a defendant must show prejudice from vindictive prosecution and that Alfredo cannot show prejudice because his functional exposure has remained constant.

The R&R erred in discussing prejudice. <u>Lane v. Lord</u>, 815 F.2d 876 (2d Cir. 1987), the only case relied on for the proposition of a standalone requirement of prejudice in this context, applies only to "the narrow issue of whether a presumption of vindictiveness arises where, <u>following a mistrial</u>, a prosecutor files a superseding indictment that adds a criminal charge that does not expose the defendant to a higher maximum criminal penalty." <u>United States v. Sattar</u>, 314 F. Supp. 2d 279, 313 (S.D.N.Y. 2004) (emphasis added); <u>Paradise v. CCI Warden</u>, 136 F.3d 331, 335 (2d Cir. 1998) ("It is true that <u>in the mistrial context</u> this court has held that a threat of greater punishment is required to justify a realistic apprehension of retaliatory motive on the part of the prosecution." (emphasis added)). Indeed, the Court in <u>Lane</u> explained that "[t]he present case falls in between the Supreme Court's pretrial/post-conviction dichotomy." 815 F.2d at 878. Accordingly, this case is inapposite, and this

alternative rationale must be **SET ASIDE**.[9]  However, Plaintiff's

Motions for discovery, a hearing, and dismissal for vindictive

prosecution are **DENIED** for the other reasons explained above.  See

supra Part II.A-C.

III. Motion for Return of Property

Alfredo does not object to this portion of the R&R (Docs.

211, 212, 216), which addresses a non-dispositive pretrial matter.

After careful consideration and review, the Court **ADOPTS** this

portion of the R&R.

IV. Severance

The Rasco Defendants seek severance, each claiming that the

other possesses exculpatory testimony that cannot be offered at a

joint trial.  (Docs. 50, 61.)  The Magistrate Judge dismissed both

Motions as lacking specificity and substantiation.  (Doc. 200 at

33, 37-39.)

A.  Alfredo Rasco

Alfredo Rasco has not objected to this portion of the R&R

(Docs. 212, 216), which addresses a non-dispositive pretrial

---

[9] The Government cites no cases regarding its proposed standalone
requirement of prejudice, and the Court has found none.  Even Lane
does not support the standalone requirement of prejudice.
Instead, Lane stands for the proposition that when the Government
increases charges after a mistrial but those increases do not
affect the defendant's potential sentence, the increased charges
are not meaningful proof of a realistic likelihood of
vindictiveness.  815 F.2d at 879; see United States v. Hill, 93
Fed App'x 540, 546 (4th Cir. 2004) (unpublished table opinion)
(citing Lane, 815 F.2d at 879.).

matter.  After careful consideration and review, the Court **ADOPTS** this portion of the R&R.

B.  <u>Niurka Rasco</u>

The R&R denies Niurka's Motion for severance for two alternative reasons, a lack of specific allegations and a lack of proof of her co-defendant's testimony.  Niurka objects to this portion of the R&R, stating that she has provided specifics and that there is no requirement that such specifics be proffered in affidavit form.  (Doc. 211 at 4-7.)

Motions for severance are governed by Federal Rule of Criminal Procedure 14, which allows severance where a joint trial "appears to prejudice a defendant or the government."  This rule "requires a trial court to balance the rights of the defendants and the government to a trial that is free from the prejudice that may result from joint trials against the public's interest in efficient and economic administration of justice."  <u>United States v. Novaton</u>, 271 F.3d 968, 989 (11th Cir. 2001).  However, there is a "well-settled principle that it is preferred that persons who are charged together should also be tried together, particularly in conspiracy cases."  <u>Id.</u>  The Eleventh Circuit employs a two-step inquiry for ruling on severance motions.  First, the defendant must demonstrate: "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4)

that the co-defendant would indeed have testified at a separate trial." Id. If that showing is made, a court must then: "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Id.

Here, the Magistrate Judge correctly concluded that Niurka cannot satisfy the first step of this inquiry because she pointed to no evidence of either her co-defendants' willingness to testify or the contents of that testimony. As the Eleventh Circuit has explained, "[o]ur cases examining severance motions based on the need for a co-defendant's exculpatory testimony have often looked hard at the substance of the affidavits proffered by the co-defendant who purportedly would testify in a separate trial." United States v. Arneth, 294 Fed. App'x 448, 451 (11th Cir. 2008); see also United States v. Browne, 505 F.3d 1229, 1270 (11th Cir. 2007). The Court **CONCURS** with the R&R that Niurka "provides no basis to support her assertions as to the substance of [the] potential testimony, nor does she cite to anything in the record indicating that [the co-defendant] would even testify at a separate trial." Arneth, 294 Fed. App'x at 451. Without such a

proffer, the Motion to sever cannot be granted.[10]      Id.
Accordingly, this portion of the R&R is **ADOPTED** and **MODIFIED** to
include the above analysis.  On this basis, the Motion is **DENIED**.

The Court finds that the other rationale in the R&R, that
specific exonerative facts were not alleged, to be clearly
erroneous.  Niurka contends that:

> The substance of the desired testimony from Alfredo F.
> Rasco and Maderos is that although Rasco was the
> registered owner of United Medical Center, Inc. . . .
> she took no active role in incorporating said company,
> submitting any Medicare Enrollment Application on behalf
> of the same, nor submitting any fraudulent claims to
> Medicare on behalf of United Medical, United Therapy,
> Inc., Savannah Medical Services, Inc. or Longevity Care
> Services, Inc., other than providing her signature on
> documents, the purpose of which were unknown to her, at
> the direction of Alfredo Rasco; furthermore, both
> Alfredo F. Rasco and Maderos will testify that Rasco
> took no active role, nor participated in any way, in the
> oversight or daily operations of any of the
> aforementioned components.

(Doc. 61 at 3.)  While the Eleventh Circuit has required more than

"bare exculpatory denials, devoid of any specific exonerative

facts," Novaton, 271 F.3d at 990, Niurka has set forth multiple

exonerative facts: (1) that Niurka was not involved in

incorporating the businesses, (2) that Niurka was not involved in

---

[10] Niurka contends that her failure to proffer an affidavit from
one of her co-defendants is not fatal to this Motion because
"there is no specific requirement that any such affidavit be
produced." (Doc. 211 at 6.)  While proof of the testimony need
not come in affidavit form, it must still be provided. Just
because Niurka contends that her co-defendants will testify of her
innocence does not make it so. That is why co-defendant
affidavits are generally provided. Here, neither co-defendant has
even offered to provide an affidavit for in camera review,
suggesting that the testimony she hopes for is not forthcoming.

enrolling the businesses in Medicare, (3) that Niurka was asked to sign multiple documents without knowing their purpose, and (4) that she was not involved in the day-to-day operations of the business. The additional detail that the Magistrate Judge and Government seek would simply be further proof of a negative—that Niurka was not involved in the day-to-day affairs of these businesses. Given that several such activities—the failure to be involved in incorporating the business or enrolling the business in Medicare—have already been alleged, no additional allegations are necessary.[11] Accordingly, Niurka has alleged sufficiently specific facts, and this portion of the R&R must be **SET ASIDE** as **clearly erroneous**.

V.    Miranda Claim

Since the time when the Report and Recommendation was issued, Niurka has withdrawn her Motion asserting a Miranda violation. (Doc. 230.) Niurka contends that this portion of the R&R is now moot. (Doc. 211 at 1.) Niurka is correct. Accordingly, this portion of the R&R is **SET ASIDE** as **MOOT**.

VI.   Venue

The Magistrate Judge has recommended that this Court deny Niurka's Motion to Dismiss Count Sixty of the third superseding

---

[11] A contrary holding would place an insatiable burden on Niurka. There could be a limitless number of examples of day-to-day business activities in which she took no part, assuming she truly was not involved in the businesses. Due to the infinite nature of the potential "exonerative facts," it is nonsensical to require a complete list of examples.

indictment, which charges Niurka with making a false statement to the Federal Bureau of Investigation that affected the prosecution in this district in violation of 18 U.S.C. § 1001. (Doc. 200 at 34-37.) Niurka objects, contending that her lie occurred in the Southern District of Florida and did not actually affect the instant prosecution in this district. (Doc. 211 at 2-3.)

To determine venue in § 1001 cases, courts apply the general venue statue, 18 U.S.C. § 3237(a), which provides that venue is proper in any district in which the offense was begun, continued, or completed. United States v. Hernando Ospina, 798 F.2d 1570, 1577 (11th Cir. 1986). Generally, once a material false statement is made to a government agency, venue becomes proper in any district through which the statement passed as the Government made immediate use of it. See, e.g., United States v. Ringer, 300 F.3d 788, 790-92 (7th Cir. 2002); United States v. Barsanti, 943 F.2d 428, 434-36 (4th Cir. 1991); United States v. Zwego, 657 F.2d 248, 251 (10th Cir. 1981); United States v. Candella, 487 F.2d 1223, 1227-28 (2d Cir. 1973). Further, to satisfy the materiality requirement of § 1001, "it is enough if the statements had a natural tendency to influence, or be capable of affecting or influencing, a governmental function." United States v. Diaz, 690 F.2d 1352, 1357 (11th cir. 1982).

In essence, Niurka challenges the fact that her statement was material, arguing that her false statement "did not materially

affect the instant prosecution in the Southern District of Georgia in any way." (Doc. 211 at 3-4.) However, a false statement relating directly to an ongoing investigation in the Southern District of Georgia passes the test for materiality because the statement is "capable of affecting or influencing" the investigation, even if it did not actually do so. Diaz, 690 F.2d at 1357. And, there is little doubt that Niurka's false statement passed to the Southern District of Georgia in its natural course, as the purpose of the interview was to determine what she knew about the frauds under investigation in this District. Therefore, her objection is unavailing.

After a careful de novo review, and for the foregoing reasons, the Court finds Niurka's objections to this portion of the R&R unavailing. Therefore, the Court **ADOPTS** this portion of the R&R, which is **MODIFIED** to include the above analysis. The Motion is **DENIED**.

## CONCLUSION

The Court has considered Alfredo and Niurka's objections (Docs. 211, 212, 216) to the R&R (Doc. 200). For the above stated reasons, the R&R is **ADOPTED IN PART**, and **MODIFIED** to be consistent with this Order. The Court issues the following rulings: (1) the Motion to Dismiss for Violation of the Sixth Amendment (Doc. 166) is **DENIED**; (2) the Motion to Dismiss for Vindictive Prosecution (Doc. 165) is **DENIED**; (3) the Motion for Discovery Regarding

Vindictive Prosecution (Doc. 180) is **DENIED**; (4) the Motion for Return of Property (Doc. 128) is **DENIED**; (5) Alfredo's Motion to Sever (Doc. 50) is **DENIED**; (6) Niurka's Motion to Exclude Statements (Doc. 168) is **DISMISSED AS MOOT**; (7) Niurka's Motion to Dismiss for Improper Venue (Doc. 170) is **DENIED**; and (8) Niurka's Motion to Sever (Doc. 169) is **DENIED**.

SO ORDERED this *27th* day of May 2010.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA